BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE JOHNSON & JOHNSON
"BABY POWDER" and "SHOWER
TO SHOWER" MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

MDL DOCKET NO. 16-71

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
CONSOLIDATION AND TRANSFER
PURSUANT TO 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407 and Rule 7.2(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiff Tanashiska Lumas respectfully submits this memorandum of law in support of her motion for transfer of all currently filed federal cases in this litigation, and any subsequent "tag along" cases involving similar claims, to the United States District Court for the Southern District of Illinois.

Ms. Lumas was diagnosed with ovarian cancer in 2011 after using Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies talcum powder products—Johnson's Baby Powder and Shower to Shower—for more than twenty (20) years. For decades, Defendants have targeted sales of their talcum powder products to women, advertising their products as safe while also promoting freshness and comfort. The unfortunate truth is that Defendants have been aware since as early as 1971 that their talcum powder products cause cancer in women who use their products in the genital area. Despite this awareness, Defendants continue to market their talcum powder products towards women and to date have failed to place any warnings on their talcum powder products.  Ms. Lumas seeks damages including but not limited to pain and suffering, emotional distress, loss of enjoyment of life, medical expenses, out of pocket

1

expenses, lost earnings, and other economic and non-economic damages, and punitive damages from Defendants.

Plaintiff is already aware of numerous cases being filed on behalf of women who have been similarly injured by Defendants, and fully expects additional cases to be filed nationwide. Based on the numerous common questions of fact involved, the compelling need to establish uniform and consistent standards in conducting pretrial discovery and motion practice, and because the most logical and convenient location for these proceedings is the Southern District of Illinois, Ms. Lumas respectfully requests coordinated proceedings there before the Honorable David R. Herndon.

## I.   BACKGROUND

This motion for transfer involves at least 11 actions pending in 10 different jurisdictions across the United States asserting common factual allegations and involving overlapping claims and legal issues. Based on the extensive press coverage of Defendants' actions and the nationwide advertising that has come from plaintiff firms, Ms. Lumas expects many additional actions to be filed in the federal courts alleging similar claims.

### A. Plaintiffs

The various plaintiffs in this litigation have all filed civil actions arising from injuries caused by Defendants' talcum powder products and Defendants' failure to warn of the harm of extended talcum powder use and talcum's cancer causing properties. The plaintiffs are women or wrongful death beneficiaries of women who have been diagnosed with cancer as a result of using Defendants' talcum powder products or consumers who were deceived by Defendants' omissions and representations that Defendants' talcum powder products were safe to use. Each of these pending federal cases presents a common core of facts, in that each (i) alleges that

plaintiffs were diagnosed with cancer after use of Defendants' talcum powder products and Defendants' failure to warn of talcum powder's carcinogenic qualities; (ii) asserts injury and damages arising from Defendants' wrongful conduct; and (iii) alleges the same or similar conduct by Defendants.

Indeed, the factual allegations in plaintiffs' complaints are nearly identical in numerous critical respects. Each plaintiff used Defendants' talcum powder products for multiple years and was diagnosed with cancer as a result of the use of Defendants' talcum powder products. Each Defendant knew, or should have known, that their talcum powder products are unreasonably dangerous when used by a woman in her genital area but have continued to design, manufacture, sell, distribute, market, promote, and supply their talcum powder products so as to maximize sales and profits at the expense of public health and safety in conscious disregard of the harm to the public and the plaintiffs. Plaintiffs in the at least 11 pending (as of July 13, 2016) federal actions are geographically diverse, residing in eight different states located across the country: Illinois, Louisiana, Mississippi, California, New Jersey, Pennsylvania, Oklahoma, and Tennessee. In addition, the plaintiffs in the Related Actions are represented by a regionally diverse group of law firms.

### B. Defendants

Defendant Johnson & Johnson ("J&J) is a New Jersey corporation with its principal place of business in the State of New Jersey.

Defendant Johnson & Johnson Consumer Companies, Inc. ("J&J Consumer") is a New Jersey corporation with its principal place of business in the State of New Jersey.

Defendant Imerys Talc America, Inc., f/k/a Luzenac America, Inc. ("Imerys") is a Delaware corporation with its principal place of business in Georgia.

Defendant Personal Care Products Council f/k/a Cosmetic, Toiletry, and Fragrance Association ("PCPC") is a corporation under the laws of the District of Columbia with its principal place of business in the District of Columbia.

### C. Status of the Actions

With the exception of the New Jersey and Eastern District of California cases, every other federal case has been filed in 2016.[1] Given the infancy of these cases, most of the plaintiffs have not completed (or even begun) discovery or are engaged in any other procedural posture that would move the matters along towards trial such that transfer would be unduly prejudicial or inefficient. The fact that all but two of these cases are at the same early procedural stage provides a good basis to coordinate them.

## II. ARGUMENT

The Johnson & Johnson "Baby Powder" And "Shower To Shower" Litigation actions currently pending in numerous different federal districts meet the requirements for transfer pursuant to 28 U.S.C. § 1407, and therefore, transfer of the above referenced actions is warranted. Section 1407 authorizes the transfer of two or more civil actions, pending in different districts, for coordinated or consolidated pretrial proceedings, when (1) the "actions involv[e] one or more common questions of fact"; (2) transfer "will be for the convenience of parties and witnesses"; and (3) transfer "will promote the just and efficient conduct of such actions."

"The multidistrict litigation statute, 28 U.S.C. § 1407, was enacted as a means of conserving judicial resources in situations where multiple cases involving common questions of fact were filed in different districts." *Royster v. Food Lion (In re Food Lion)*, 73 F.3d 528, 531-32 (4th Cir. 1996). Two critical goals of Section 1407 are to promote efficiency and consistency.

---

[1] Plaintiff is aware of at least two state court actions in Missouri which have gone to trial.

*Illinois Municipal Retirement Fund v. Citigroup, Inc.*, 391 F.3d 844, 852 (7th Cir. 2004). The statute "was [also] meant to 'assure uniform and expeditious treatment in the pretrial procedures in multidistrict litigation'" and "[w]ithout it, 'conflicting pretrial discovery demands for documents and witnesses' might 'disrupt the functions of the Federal courts.'" *In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006) (quoting H.R. Rep. No. 1130, 90th Cong., 2d Sess. 1 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1899). The alternative to appropriate transfer is "multiplied delay, confusion, conflict, inordinate expense and inefficiency." *Id.* (quoting *In re Plumbing Fixture Cases,* 298 F. Supp. 484, 495 (J.P.M.L. 1968)).

These actions assert overlapping claims, based on multiple common factual allegations, and will involve common legal theories. Consolidated pretrial treatment under Section 1407 will assist the parties and the courts in avoiding duplicative and conflicting rulings on the common issues in dispute. Granting this motion will also serve the convenience of the parties and witnesses and promote the just and efficient resolution of the litigation.

The cases are well-suited for coordination, as this Panel has frequently ordered the multidistrict transfer of pharmaceutical and other product liability cases. *See In re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2100 (J.P.M.L. Oct. 1, 2009); *In re: Pradaxa (Dabigatran Etexilate) Products liability Litigation*, MDL No. 2385 (J.P.M.L. Aug. 8, 2012); *In re Fluoroquinolone Prods. Liab. Litig.*, MDL No. 2642 (J.P.M.L. Aug. 17, 2015).

### A.     These Cases Involve Common Questions of Fact.

The first element of the Section 1407 transfer analysis is whether there are one or more common questions of fact. *See* 28 U.S.C. § 1407. The statute, however, does not require a

"complete identity or even [a] majority" of common questions of fact to justify transfer. *In re Zyprexa Prods. Liab. Litig.,* 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004). Here there are multiple common issues among the Related Actions. Each complaint alleges that Defendants misrepresented the safety and reliability of their talcum powder products. Common questions of fact among the actions include:

    a.    The alleged misrepresentations by Defendants, as contained in the same advertising and promotional documents and materials cited in each action;

    b.    The actual and ultimate causes of plaintiffs' cancer;

    c.    Defendants' knowledge concerning cancer resulting from talcum powder use;

    d.    Which Defendants knew of the correlation between cancer and talcum powder use; and

    e.    Defendants' actions taken to conceal the risks related to talcum powder use from consumers.

Because the factual assertions in each of the actions are nearly identical, and many important legal issues in dispute will also be nearly identical, transfer and coordination or consolidation of these actions is highly appropriate. *See In re Factor VIII or IX Concentrate Blood Prods. Prod. Liab. Litig.,* 853 F. Supp. 454, 455 (J.P.M.L. 1993).

In addition, all of these actions rely upon similar legal theories of recovery. These theories include: misrepresentation, concealment, unfair business practices, and breach of consumer protection provisions of state law. While not every cause of action is asserted in every one of the cases, and applicable state law will vary, the lawsuits all share related underlying legal theories of liability. As the Panel has previously stated, "the presence of additional or differing legal theories is not significant when the actions still arise from a common factual core . . . ." *In re Oxycontin Antitrust Litig.,* 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008). To the extent that there are any unique discovery issues among the cases, the transferee court can formulate a

6

pretrial program that allows for the case to proceed concurrently on a separate track along with the permitted discovery on common issues. *See In re Joseph F. Smith Patent Litigation,* 407 F. Supp. 1403, 1404 (J.P.M.L. 1976).

Because numerous common issues of fact exist among these cases, the pending actions satisfy the first element of the transfer analysis under Section 1407.

**B. Transfer and Consolidation in the Southern District of Illinois Will Serve the Convenience of the Parties.**

The convenience of the parties and prevention of duplicative discovery also favor transfer. *See* 28 U.S.C. § 1407. At present all but two of the cases are in their infancy. In fact, eight of the eleven cases have been filed in just the past three months. If these cases continue to proceed separately, there will be substantial duplicative discovery because of the many overlapping issues of fact and law. Multiple cases could involve the repetitive depositions of the same company representatives, other current and former employees, and expert witnesses, as well as production of the same records, and responses to duplicative interrogatories and document requests in jurisdictions around the country. *See, e.g., In re: Pilot Flying J Fuel Rebate Contract Litigation (No. 11),* 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of Pilot's officers and employees and duplicative document discovery regarding the alleged scheme").

Absent transfer, the federal court system will be forced to administer - and Defendants will be compelled to defend - these related actions across multiple venues, all proceeding on potentially different pretrial schedules and subject to different judicial decision-making and local procedural requirements. Moreover, each plaintiff will be required to monitor and possibly participate in each of the other similar actions to ensure that Defendants do not provide inconsistent or misleading information.

None of the pending cases have progressed to the point where significant efficiencies will be forfeited through transfer to an MDL proceeding. This Panel has routinely recognized that consolidating litigation in one court benefits *both* plaintiffs and defendants. For example, pretrial transfer would reduce discovery delays and costs for plaintiffs, and permit plaintiffs' counsel to coordinate their efforts and share the pretrial workload. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 173 F.Supp.2d 1377, 1379 (J.P.M.L. 2001) ("And it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned."); *In re Baldwin-United Corp. Litigation,* 581 F. Supp. 739, 741 (J.P.M.L. 1984) (same). As for Defendants, expert depositions will be coordinated, document production will be centralized, and travel for its current and former employees will be minimized, since it will only have to appear in one location rather than multiple districts around the country.

While Ms. Lumas anticipates there will be hundreds, if not thousands, of additional case filings, even the current level of litigation would benefit from transfer and coordinated proceedings, given the allegations of these complaints. *See In re First Nat'l Collection Bureau, Inc., Tel. Consumer Prof. Act (TCPA) Litig.,* 11 F. Supp. 3d 1353, 1354 (J.P.M.L. 2014) ("Although there are relatively few parties and actions at present, efficiencies can be gained from having these actions proceed in a single district," such as "eliminat[ing] duplicative discovery; prevent[ing] inconsistent pretrial rulings . . . and conserv[ing] the resources of the parties, their counsel and the judiciary."); *In re Hyundai & Kia Fuel Econ. Litig.,* 923 F. Supp. 2d 1364, 1365 (J.P.M.L. 2013) (creating multidistrict litigation for less than 15 pending actions); *In re: Zurn Pex Plumbing Products Liability Litigation,* 572 F.Supp.2d 1380, 1381 (J.P.M.L. 2008) (granting

transfer and consolidation of three cases and six potential tag-alongs because of the "overlapping and, often, nearly identical factual allegations that will likely require duplicative discovery and motion practice.")

Centralizing these actions under Section 1407 will ensure streamlined resolution of this litigation to the overall benefit of the parties and the judiciary."); *In re Amoxicillin Patent & Antitrust Litig.,* 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer and consolidation of three cases "[b]ecause of the presence of complex factual questions and the strong likelihood that discovery concerning these questions will be both complicated and time-consuming, we rule that transfer under Section 1407 is appropriate at the present time even though only three actions are presently involved.").

In sum, transfer of these actions would serve the convenience of the parties and eliminate duplicative discovery, saving the parties-and the courts-significant time, effort, and money.

**C.      Transfer Will Promote the Just and Efficient Conduct of These Actions**

The Panel recognizes multiple factors as informing whether the just and efficient conduct of a litigation will be advanced by transfer, including: (i) avoidance of conflicting rulings in various cases; (ii) prevention of duplication of discovery on common issues; (iii) avoidance of conflicting and duplicative pretrial conferences; (iv) advancing judicial economy; and (v) reducing the burden on the parties by allowing division of workload among several attorneys. *See, e.g., In re: Endangered Species Act Section 4 Deadline Litig.,* 716 F.Supp.2d 1369, 1369 (J.P.M.L. 2010); *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation,* 424 F. Supp. 504, 506 (J.P.M.L. 1976).

All of these factors will be advanced by transfer here. At present, there are already numerous cases filed across the country against Defendants, and there will be certainly many

9

more filed. At least twelve different plaintiffs' firms from around the country already represent plaintiffs in these cases. Under this *status quo,* as many as 12 different federal judges will be ruling on the many common factual and legal issues presented in these cases. The presence of numerous counsel, plaintiffs, and courts currently involved in this litigation in almost every region of the country creates a clear risk of conflicting rulings, with the potential to generate significant confusion and conflict among the parties, as well as inconsistent obligations on Defendants.

By contrast, a single MDL judge coordinating pretrial discovery and ruling on pretrial motions in all of these federal cases at once will help reduce witness inconvenience, the cumulative burden on the courts, and the litigation's overall expense, as well as minimizing this potential for conflicting rulings. *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014) ("Issues concerning the development, manufacture, regulatory approval, labeling, and marketing of Xarelto thus are common to all actions. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary."); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.,* 936 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013) ("Centralization will ... prevent inconsistent pretrial rulings (on Daubert issues and other matters), and conserve the resources of the parties, their counsel, and the judiciary."); *Bott v. Delphi Auto. LLP (In re Auto. Wire Harness Sys. Antitrust Litig.)*, 844 F. Supp. 2d 1367, 1367 (J.P.M.L. 2012) (same).

Transfer also will reduce the burden on the parties by allowing more efficient and centralized divisions of workload among the numerous attorneys already involved in this litigation, as well as those who join later. Plaintiffs themselves will reap efficiencies from being able to divide up the management and conduct of the litigation as part of a unified MDL process

through a plaintiffs' steering committee or similar mechanism, instead of each plaintiffs' firm separately litigating its own cases on distinct and parallel tracks. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 173 F.Supp.2d at 1379; *In re Tylenol Mktg., Sales Pracs. and Prods. Liab. Litig.,* 936 F.Supp.2d at 1379 ("Centralization will ... conserve the resources of the parties, their counsel, and the judiciary."). Accordingly, transfer to a single district court is appropriate for the just and efficient resolution of these cases.

### D. Plaintiffs Respectfully Suggest Transfer Of These Actions To The Southern District of Illinois

In determining the appropriate transferee venue, this Panel considers the ability of a district to provide an efficient ruling over the large number of cases expected to be filed.

Although many district courts would be suited for transfer, the Southern District of Illinois possesses unique characteristics which set it apart from others in consideration of the relative convenience of the parties and witnesses involved. The Southern District of Illinois, centrally located, would permit convenient travel for the parties and counsel as compared to travel to the East or West Coast. Further, the Southern District of Illinois is in close geographical proximity to all of the St. Louis, Missouri state court cases, [2] making this location convenient for document discovery. The courts of the Southern District are easily reached, as they are served by major air carriers from across the country.

The Southern District of Illinois also has the resources to provide an efficient disposition of these cases. According to judicial statistics for the twelve-month period ending March 31,

---

[2] The pending state court actions (which have been remanded from federal court) are *Swann, et al. v. Johnson & Johnson, et al.*, In the Circuit Court of St. Louis City, Case No. 1422-CC09326 (Mo. 2014); *Hogans, et al. v. Johnson & Johnson, et al.*, Case No. 1422-CC09012 (Mo. 2014); and *Ferrar, et al. v. Johnson & Johnson, et al.*, Case No. 1422-CC09964 (Mo. 2014). There is also a case pending before the Ninth Circuit, *Blaes v. Johnson &* Johnson, Case No. 16-2080 (Ninth Cir. filed May 3, 2016), but the Plaintiff in that case moved to voluntarily dismiss his claims on the eve of trial and the issues on appeal relate to whether or not dismissal was proper.

11

2014, civil cases proceeded to trial in 19 months in the Southern District of Illinois.[3]

*See* http://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2014/03/31.

Plaintiffs respectfully suggest that these actions be assigned to the Honorable David R. Herndon. Judge Herndon has served as the Chief Judge for the Southern District of Illinois from 2007 until 2014. Judge Herndon has years of experience handling complex MDLs, having adjudicated two prior MDLs: *In re: Yasmin and Yaz (drospirenon) Marketing Sales Practices* (MDL-2100) and *In re: Pradaxa (Dabigatran Etexilate) Products liability Litigation* (MDL-2385). This Panel has praised Judge Herndon for his experience and ability to handle large-scale MDLs:

> [B]y selecting Judge David R. Herndon to preside over this matter, we are selecting a jurist with the willingness and ability to handle this litigation. Judge Herndon, an experienced MDL judge, has deftly presided over *In re: Yasmins and Yaz (drospirenon) Marketing Sales Practices*, 655 F. Supp. 2d 1343 (J.P.M.L. 2009), another large pharmaceutical products liability litigation.

*In re: Pradaxa (Dabigatran Etexilate) Products liability Litigation*, 883 F. Supp. 2d at 1356. In the *Praxada* MDL, Judge Herndon facilitated a global settlement in under 22 months from the date this Panel transfer the MDL to him, on August 8, 2012. Judge Herndon managed this settlement quickly and efficiently, despite presiding over 2,500 filed cases, entering 85 Case Management Orders, and holding over 28 status hearings. Similarly, The *Yaz* MDL was one of the largest mass tort litigations in history; however, Judge Herndon facilitated a mass settlement initiative in under 27 months from the date of this Panel's Transfer Order on October 1, 2009.

The issues present in the case are similarly complex to the issues which were resolved in the *Yaz* and *Praxada* MDLs. Further, Judge Herndon is already assigned to one of the related

---

[3] March 31, 2014 is the most recent available data for the Southern District of Illinois.

cases: *Mihalich v. Johnson & Johnson.*, 3:14-cv-00600-DRH-SCW (S.D. Ill.). As such, he is familiar with the issues of this case and the other Related Actions. Judge Herndon's experience and familiarity with the claims in these cases especially favors transfer to him.

### III.     CONCLUSION

For the foregoing reasons and those articulated in their attendant motion, Plaintiffs respectfully request that the Panel transfer the Related Action, and any future cases, to the United States District Court for the Southern District of Illinois for consolidation before Judge David R. Herndon.

Dated:   July 15, 2016

Respectfully submitted,

By: /s/ *Don Barrett*
John "Don" Barrett
David McMullan, Jr.
Katherine Barrett Riley
Sterling Starns
Cary Littlejohn
Brandi Hamilton
DON BARRETT, P.A.
404 Court Square
Lexington, Mississippi 39095
Telephone: (662) 834-2488
Fax: (662) 834-2628
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com
kriley@barrettlawgroup.com
sstarns@barrettlawgroup.com
clittlejohn@barrettlawgroup.com
bhamilton@barrettlawgroup.com

*Counsel for Plaintiffs*