# Exhibit 8

# US District Court Civil Docket

U.S. District - New Jersey
(Trenton)

## 3:14cv7079

## Chakalos v. Johnson & Johnson et al

This case was retrieved from the court on Thursday, June 09, 2016

| | | | |
|---|---|---|---|
| Date Filed: | 11/11/2014 | | |
| Assigned To: | Judge Freda L. Wolfson | Class Code: | OPEN |
| Referred To: | Magistrate Judge Lois H. Goodman | Closed: | |
| Nature of suit: | TORTS - Personal Injury - Health Care/Pharmaceutical Personal Injury/Product Liability (367) | Statute: | 28:1441 |
| Cause: | Notice of Removal- Product Liability | Jury Demand: | Both |
| Lead Docket: | None | Demand Amount: | $0 |
| Other Docket: | SOMERSET COUNTY SUPERIOR COURT OF NEW JERSEY, L 1449 14 | NOS Description: | TORTS - Personal Injury - Health Care/Pharmaceutical Personal Injury/Product Liability |
| Jurisdiction: | Diversity | | |

| Litigants | Attorneys |
|---|---|
| James Chakalos<br>as Personal Representative on behalf of the Estate of Janice Chakalos<br>Plaintiff | MICHAEL JAMES KUHARSKI<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>KUHARSKI, LEVITZ & GIOVINAZZO, ESQS.<br>176 Hart Blvd<br>Staten Island , NY 10301<br>USA<br>718-448-1600<br>Fax: 718-448-1699<br>Email:Mkuharski@klawnyc.Com |
| Johnson & Johnson<br>Defendant | SUSAN M. SHARKO<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>DRINKER, BIDDLE & REATH, LLP<br>600 Campus Drive<br>Florham Park , NJ 07932-1047<br>USA<br>973-549-7650<br>Email:Susan.Sharko@dbr.Com<br><br>JULIE LYNN TERSIGNI<br>ATTORNEY TO BE NOTICED<br>DRINKER BIDDLE & REATH LLP<br>600 Campus Drive<br>Florham Park , NJ 07932<br>USA<br>973-549-7000<br>Email:Julie.Tersigni@dbr.Com |
| Johnson & Johnson Consumer Companies, Inc.<br>Defendant | SUSAN M. SHARKO<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>DRINKER, BIDDLE & REATH, LLP<br>600 Campus Drive<br>Florham Park , NJ 07932-1047<br>USA<br>973-549-7650<br>Email:Susan.Sharko@dbr.Com |

JULIE LYNN TERSIGNI
ATTORNEY TO BE NOTICED
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park , NJ 07932
USA
973-549-7000
Email:Julie.Tersigni@dbr.Com

Imerys Talc America, Inc.
formerly known as
LUZENAC AMERICA, INC.
Defendant

LORNA A. DOTRO
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
COUGHLIN DUFFY LLP
350 Mount Kemble Avenue
Morristown , NJ 07962
USA
973-631-6016
Fax: (973) 267-6442
Email:Ldotro@coughlinduffy.Com

MARK K. SILVER
ATTORNEY TO BE NOTICED
COUGHLIN DUFFY LLP
350 Mount Kemble Avenue
Po Box 1917
Morristown , NJ 07962-1917
USA
(973) 267-0058
Fax: (973) 267-6442
Email:Msilver@coughlinduffy.Com

Valeant Pharmaceuticals North America
[Term: 03/19/2015]
Defendant

Valeant Pharmaceuticals North America Llc
[Term: 03/19/2015]
Defendant

Valeant Pharmaceuticals International
[Term: 03/19/2015]
Defendant

Chattem, Inc.
[Term: 04/14/2015]
Defendant

MATTHEW THOMAS SALZMANN
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
[Term: 03/14/2016]
ARNOLD & PORTER
399 Park Avenue
New York , NY 10022
USA
212-751-1000
Email:Matthew.Salzmann@aporter.Com

KEVIN TIMOTHY SULLIVAN
ATTORNEY TO BE NOTICED
[Term: 03/14/2016]
ARNOLD & PORTER LLP
399 Park Avenue
34th Floor
New York , NY 10022
USA
212-715-1000
Email:Kevin.Sullivan@aporter.Com

ROBERT BENJAMIN SOBELMAN
ATTORNEY TO BE NOTICED
[Term: 02/12/2015]
ARNOLD & PORTER LLP
399 Park Avenue
New York , NY 10022
USA
212-715-1057

Email:Robert.Sobelman@aporter.Com


Sanofi US Services Inc.
[Term: 02/18/2015]
Defendant

MATTHEW THOMAS SALZMANN
ATTORNEY TO BE NOTICED
ARNOLD & PORTER
399 Park Avenue
New York , NY 10022
USA
212-751-1000
Email:Matthew.Salzmann@aporter.Com

ROBERT BENJAMIN SOBELMAN
ATTORNEY TO BE NOTICED
[Term: 02/12/2015]
ARNOLD & PORTER LLP
399 Park Avenue
New York , NY 10022
USA
212-715-1057
Email:Robert.Sobelman@aporter.Com

John Does/Jane Does 1-30
Defendant

Unknown Businesses And/Or Corporations A-Z
Defendant

| Date | # | Proceeding Text | Source |
|---|---|---|---|
| 11/11/2014 | 1 | NOTICE OF REMOVAL by CHATTEM, INC. from SOMERSET COUNTY SUPERIOR COURT OF NEW JERSEY, case number L 1449 14. ( Filing and Admin fee $ 400 receipt number 6042156), filed by CHATTEM, INC.. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A)(jjc) (Entered: 11/13/2014) | |
| 11/11/2014 | 2 | Corporate Disclosure Statement by CHATTEM, INC. identifying SANOFI SA as Corporate Parent. (jjc) (Entered: 11/13/2014) | |
| 11/13/2014 | | CASE REFERRED to Arbitration. (jjc) (Entered: 11/13/2014) | |
| 11/13/2014 | | CLERK'S QUALITY CONTROL MESSAGE - The Original State Court Complaint (Exhibit A 1 ) submitted by Matthew Salzmann on 11/11/2014 appears to have address information that does not match the court's records for this case. PLAINTIFF'S COUNSEL should refer to the court's website at www.njd.uscourts.gov for information and instructions on maintaining your account. (jjc) (Entered: 11/13/2014) | |
| 11/13/2014 | 3 | ANSWER to Complaint with JURY DEMAND by CHATTEM, INC..(SALZMANN, MATTHEW) (Entered: 11/13/2014) | |
| 11/14/2014 | 4 | NOTICE by CHATTEM, INC. re 1 Notice of Removal, Supplement to Notice of Removal (SALZMANN, MATTHEW) (Entered: 11/14/2014) | |
| 11/24/2014 | 5 | MOTION for Leave to Appear Pro Hac Vice as to Anand Agneshwar by CHATTEM, INC., SANOFI US SERVICES INC.. (Attachments: # 1 Certification of Matthew T. Salzmann, # 2 Certification of Anand Agneshwar, # 3 Text of Proposed Order)(SALZMANN, MATTHEW) (Entered: 11/24/2014) | |
| 11/24/2014 | 6 | ORDER SCHEDULING CONFERENCE: Initial Conference set for 1/23/2015 at 10:00 AM in Trenton - Courtroom 7E before Magistrate Judge Lois H. Goodman. Signed by Magistrate Judge Lois H. Goodman on 11/24/2014. (eaj) (Entered: 11/24/2014) | |
| 11/24/2014 | | CLERK'S QUALITY CONTROL MESSAGE - The Certification of Anand Agneshwar submitted as an attachment to the Motion for Pro Hac 5 by Matthew Salzmann contains an improper signature. Only Registered Users are permitted to sign electronically filed documents with an s/. PLEASE RESUBMIT THE DOCUMENT WITH A PROPER ELECTRONIC OR SCANNED SIGNATURE. This submission will remain on the docket unless otherwise ordered by the court. (eaj) (Entered: 11/24/2014) | |
| 11/24/2014 | | Set Deadlines as to 5 MOTION for Leave to Appear Pro Hac Vice as to Anand Agneshwar. Motion set for 1/5/2015 before Magistrate Judge Lois H. Goodman. The motion will be decided on the papers. No appearances required unless notified by the court. (eaj) (Entered: 11/24/2014) | |
| 11/26/2014 | 7 | Certification of Anand Agneshwar on behalf of CHATTEM, INC., SANOFI US SERVICES INC. Re 5 Motion for Leave to Appear,. (SALZMANN, MATTHEW) (Entered: 11/26/2014) | |
| 12/01/2014 | 8 | ANSWER to Complaint with JURY DEMAND by IMERYS TALC AMERICA, INC.. (Attachments: # 1 Corporate Disclosure (Re Complaint only))(DOTRO, LORNA) (Entered: 12/01/2014) | |

| | | |
|---|---|---|
| 12/01/2014 | 9 | NOTICE by IMERYS TALC AMERICA, INC. re 1 Notice of Removal, Consent to Remove (DOTRO, LORNA) (Entered: 12/01/2014) |
| 12/01/2014 | 10 | NOTICE of Appearance by MARK K. SILVER on behalf of IMERYS TALC AMERICA, INC. (SILVER, MARK) (Entered: 12/01/2014) |
| 12/01/2014 | 11 | First MOTION Pro Hoc Vice Admission by JAMES CHAKALOS. (KUHARSKI, MICHAEL) (Entered: 12/01/2014) |
| 12/01/2014 | 12 | Second MOTION Pro Hoc Vice Admission by JAMES CHAKALOS. (KUHARSKI, MICHAEL) (Entered: 12/01/2014) |
| 12/02/2014 | | CLERK'S QUALITY CONTROL MESSAGE - The Corporate Disclosure Statement 8 filed by Lorna Dotro on 12/1/2014 was submitted incorrectly as an Attachment to the Answer. PLEASE RESUBMIT THE Corporate Disclosure Statement USING the event Corporate Disclosure Statement. This submission will remain on the docket unless otherwise ordered by the court. (jjc) (Entered: 12/02/2014) |
| 12/02/2014 | | CLERK'S QUALITY CONTROL MESSAGE - A Notice of Motion was not submitted with the Motion for Pro Hac Vice 11 and 12 submitted by Michael Kuharski on 12/1/2014. PLEASE SUBMIT THE MISSING DOCUMENT(S) ONLY. (jjc) (Entered: 12/02/2014) |
| 12/02/2014 | 13 | Corporate Disclosure Statement by IMERYS TALC AMERICA, INC. identifying IMERYS MINERALS HOLDING LIMITED (UK) as Corporate Parent.. (DOTRO, LORNA) (Entered: 12/02/2014) |
| 12/02/2014 | 14 | ORDER granting 5 Motion for Leave to Appear Pro Hac Vice as to Anand Agneshwar, Esq.. Signed by Judge Anne E. Thompson on 12/1/2014. (jjc) (Entered: 12/02/2014) |
| 12/03/2014 | 15 | ORDER granting 12 Motion for leave to appear pro hac vice as to Carmen S. Scott, Esq.. Signed by Magistrate Judge Lois H. Goodman on 12/3/2014. (jjc) (Entered: 12/03/2014) |
| 12/03/2014 | 16 | ORDER granting 11 Motion for leave to appear pro hac vice as to Meghan Johnson Carter, Esq. Signed by Magistrate Judge Lois H. Goodman on 12/3/2014. (jjc) (Entered: 12/03/2014) |
| 12/03/2014 | 17 | NOTICE of Appearance by ROBERT BENJAMIN SOBELMAN on behalf of CHATTEM, INC., SANOFI US SERVICES INC. (SOBELMAN, ROBERT) (Entered: 12/03/2014) |
| 12/04/2014 | 18 | MOTION Pro Hoc Vice Admission re 11 First MOTION Pro Hoc Vice Admission , MOTION for Leave to Appear Pro Hac Vice by JAMES CHAKALOS. (KUHARSKI, MICHAEL) (Entered: 12/04/2014) |
| 12/04/2014 | 19 | MOTION for Leave to Appear Pro Hac Vice by JAMES CHAKALOS. (KUHARSKI, MICHAEL) (Entered: 12/04/2014) |
| 12/05/2014 | | Pro Hac Vice fee for Anand Agneshwar, Esq.: $ 150, receipt number TRE050256 (jjc) (Entered: 12/05/2014) |
| 12/23/2014 | 20 | MOTION for Leave to Appear Pro Hac Vice of Nancy M. Erfle, Esq. by IMERYS TALC AMERICA, INC.. (Attachments: # 1 Certification of Nancy M. Erfle, Esq. in Support of Application for Pro Hac Vice Admission, # 2 Certification of Lorna A. Dotro, Esq. in Support of Application for Pro Hac Vice Admission of Nancy M. Erfle, Esq., # 3 Text of Proposed Order)(DOTRO, LORNA) (Entered: 12/23/2014) |
| 12/23/2014 | | Set Deadlines as to 20 MOTION for Leave to Appear Pro Hac Vice of Nancy M. Erfle, Esq.. Motion set for 1/20/2015 before Magistrate Judge Lois H. Goodman. The motion will be decided on the papers. No appearances required unless notified by the court. (eaj) (Entered: 12/23/2014) |
| 12/23/2014 | 21 | MOTION for Leave to Appear Pro Hac Vice of Ann Thornton Field, Esq. by IMERYS TALC AMERICA, INC.. (Attachments: # 1 Certification of Ann Thornton Field, Esq. in Support of Application for Pro Hac Vice Admission, # 2 Certification of Lorna A. Dotro, Esq. in Support of Application for Pro Hac Vice Admission of Ann Thornton Field, Esq., # 3 Text of Proposed Order)(DOTRO, LORNA) (Entered: 12/23/2014) |
| 12/24/2014 | | Set Deadlines as to 21 MOTION for Leave to Appear Pro Hac Vice of Ann Thornton Field, Esq.. Motion set for 1/20/2015 before Magistrate Judge Lois H. Goodman. The motion will be decided on the papers. No appearances required unless notified by the court. (jjc) (Entered: 12/24/2014) |
| 01/02/2015 | 22 | MOTION for Leave to Appear Pro Hac Vice as to Paige H. Sharpe by CHATTEM, INC., SANOFI US SERVICES INC.. (Attachments: # 1 Certification of Matthew T. Salzmann, # 2 Certification of Paige H. Sharpe, # 3 Text of Proposed Order Granting Admission Pro Hac Vice to Paige H. Sharpe)(SALZMANN, MATTHEW) (Entered: 01/02/2015) |
| 01/05/2015 | | Set Deadlines as to 22 MOTION for Leave to Appear Pro Hac Vice as to Paige H. Sharpe. Motion set for 2/2/2015 before Magistrate Judge Lois H. Goodman. The motion will be decided on the papers. No appearances required unless notified by the court. (jjc) (Entered: 01/05/2015) |
| 01/05/2015 | 23 | NOTICE of Appearance by MICHAEL JAMES KUHARSKI on behalf of JAMES CHAKALOS (KUHARSKI, MICHAEL) (Entered: 01/05/2015) |

| | | |
|---|---|---|
| 01/05/2015 | 24 | NOTICE of Appearance by MICHAEL JAMES KUHARSKI on behalf of JAMES CHAKALOS (KUHARSKI, MICHAEL) (Entered: 01/05/2015) |
| 01/05/2015 | | CLERK'S QUALITY CONTROL MESSAGE - The Notice for Pro hac vice to receive NEF 23 and 24 filed by Michael Kuharski on 1/5/2015 were submitted incorrectly as Notice of Appearances. PLEASE RESUBMIT THE Notice for Pro hac vice to receive NEF USING the event Notice for Pro hac vice to receive NEF. This submission will remain on the docket unless otherwise ordered by the court. (jjc) (Entered: 01/05/2015) |
| 01/05/2015 | 25 | Notice of Request by Pro Hac Vice Meghan Johnson Carter, Esq. to receive Notices of Electronic Filings. (KUHARSKI, MICHAEL) (Entered: 01/05/2015) |
| 01/05/2015 | 26 | Notice of Request by Pro Hac Vice Carmen S. Scott, Esq. to receive Notices of Electronic Filings. (KUHARSKI, MICHAEL) (Entered: 01/05/2015) |
| 01/05/2015 | | CLERK'S QUALITY CONTROL MESSAGE - Please be advised that the Request for Electronic Notification of Pro Hac Vice Counsel submitted by Michael Kuharski on 1/5/2015 cannot be processed until pro hac counsel has been admitted and the application fee paid. Please review the Electronic Notification for Pro Hac Vice instructions on our website. Counsel is advised to resubmit the Request for Electronic Notification of Pro Hac Vice Counsel once payment has been recorded. This message is for informational purposes only. (jjc) (Entered: 01/05/2015) |
| 01/05/2015 | 27 | Notice of Request by Pro Hac Vice Meghan Johnson Carter, Esq. to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 0312-6131472.) (KUHARSKI, MICHAEL) (Entered: 01/05/2015) |
| 01/05/2015 | 28 | Notice of Request by Pro Hac Vice Carmen S. Scott, Esq. to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 0312-6131514.) (KUHARSKI, MICHAEL) (Entered: 01/05/2015) |
| 01/06/2015 | | Pro Hac Vice counsel, CARMEN S. SCOTT, ESQ and MEGHAN JOHNSON CARTER, ESQ, has been added to receive Notices of Electronic Filing. Pursuant to L.Civ.R. 101.1, only local counsel are entitled to sign and file papers, enter appearances and receive payments on judgments, decrees or orders. (jjc) (Entered: 01/06/2015) |
| 01/07/2015 | 29 | ORDER granting 22 Motion for Leave to Appear Pro Hac Vice as to Paige H. Sharpe, Esq.. Signed by Magistrate Judge Anne E. Thompson on 1/6/2015. (jjc) Modified on 1/9/2015 (dm). (Entered: 01/07/2015) |
| 01/09/2015 | 30 | Letter from Defendant Imerys on behalf of all parties requesting adjournment of Scheduling Conference. (DOTRO, LORNA) (Entered: 01/09/2015) |
| 01/09/2015 | 31 | Request for Summons to be Issued by JAMES CHAKALOS as to JOHNSON & JOHNSON CONSUMER COMPANIES, INC.. (KUHARSKI, MICHAEL) (Entered: 01/09/2015) |
| 01/09/2015 | 32 | Request for Summons to be Issued by JAMES CHAKALOS as to JOHNSON & JOHNSON. (KUHARSKI, MICHAEL) (Entered: 01/09/2015) |
| 01/09/2015 | 33 | Request for Summons to be Issued by JAMES CHAKALOS as to SANOFI US SERVICES INC.. (KUHARSKI, MICHAEL) (Entered: 01/09/2015) |
| 01/09/2015 | 34 | Request for Summons to be Issued by JAMES CHAKALOS as to VALEANT PHARMACEUTICALS INTERNATIONAL. (KUHARSKI, MICHAEL) (Entered: 01/09/2015) |
| 01/09/2015 | 35 | Request for Summons to be Issued by JAMES CHAKALOS as to VALEANT PHARMACEUTICALS NORTH AMERICA LLC. (KUHARSKI, MICHAEL) (Entered: 01/09/2015) |
| 01/09/2015 | 36 | Request for Summons to be Issued by JAMES CHAKALOS as to VALEANT PHARMACEUTICALS NORTH AMERICA. (KUHARSKI, MICHAEL) (Entered: 01/09/2015) |
| 01/09/2015 | 37 | SUMMONS ISSUED as to JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER COMPANIES, INC., SANOFI US SERVICES INC., VALEANT PHARMACEUTICALS INTERNATIONAL, VALEANT PHARMACEUTICALS NORTH AMERICA, VALEANT PHARMACEUTICALS NORTH AMERICA LLC Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. Issued By *JAWEIA CAMPBELL* (jjc) (Entered: 01/09/2015) |
| 01/14/2015 | | ATTENTION COUNSEL: The Initial Conference scheduled for 1/23/15 with Magistrate Judge Lois H. Goodman has been rescheduled to 3/4/15 at 9:30 a.m. (ij, ) (Entered: 01/14/2015) |
| 01/14/2015 | | Pro Hac Vice fee: as to Paige H. Sharpe $ 150, receipt number tre051626 (kas, ) (Entered: 01/14/2015) |
| 01/21/2015 | 38 | ORDER granting 21 Motion for Leave to Appear Pro Hac Vice as to Ann Thornton, Esq.. Signed by Magistrate Judge Lois H. Goodman on 1/21/2015. (jjc) (Entered: 01/21/2015) |
| 01/21/2015 | 39 | ORDER granting 20 Motion for Leave to Appear Pro Hac Vice as to Nancy M. Erfle, Esq.. Signed by Magistrate Judge Lois H. Goodman on 1/21/2015. (jjc) (Entered: 01/21/2015) |
| 01/23/2015 | 40 | Notice of Request by Pro Hac Vice Nancy M. Erfle, Esq. to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 0312-6167573.) (DOTRO, LORNA) (Entered: 01/23/2015) |

| | | |
|---|---|---|
| 01/23/2015 | 41 | Notice of Request by Pro Hac Vice Ann Thornton Field, Esq. to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 0312-6167606.) (DOTRO, LORNA) (Entered: 01/23/2015) |
| 01/23/2015 | 42 | Certification of Lorna A. Dotro, Esq. on behalf of IMERYS TALC AMERICA, INC. Re 39 Order on Motion for Leave to Appear. (DOTRO, LORNA) (Entered: 01/23/2015) |
| 01/23/2015 | 43 | Certification of Lorna A. Dotro, Esq. on behalf of IMERYS TALC AMERICA, INC. Re 38 Order on Motion for Leave to Appear. (DOTRO, LORNA) (Entered: 01/23/2015) |
| 01/25/2015 | | Pro Hac Vice counsel, NANCY M. ERFLE and ANN THORNTON FIELD, has been added to receive Notices of Electronic Filing. Pursuant to L.Civ.R. 101.1, only local counsel are entitled to sign and file papers, enter appearances and receive payments on judgments, decrees or orders. (eaj) (Entered: 01/25/2015) |
| 02/10/2015 | 44 | STIPULATION of Dismissal without Prejudice as to Defendant Sanofi US Services Inc. by CHATTEM, INC., IMERYS TALC AMERICA, INC., SANOFI US SERVICES INC.. (SOBELMAN, ROBERT) (Entered: 02/10/2015) |
| 02/10/2015 | | CLERK'S QUALITY CONTROL MESSAGE - The Proposed Order 44 submitted by Robert Sobelman on 2/10/2015 must be executed by a Judicial Officer before filing. Please forward to the appropriate Judicial Officer in accordance with his/her preferred practice as found on our website. This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (jjc) (Entered: 02/10/2015) |
| 02/12/2015 | 45 | Notice to be terminated and withdraw from Notices of Electronic filing as to case. Attorney ROBERT BENJAMIN SOBELMAN terminated. (SOBELMAN, ROBERT) (Entered: 02/12/2015) |
| 02/12/2015 | 46 | ANSWER to Complaint with JURY DEMAND by JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER COMPANIES, INC.. (Attachments: # 1 Corporate Disclosure (Re Complaint only), # 2 Certificate of Service)(SHARKO, SUSAN) (Entered: 02/12/2015) |
| 02/12/2015 | | CLERK'S QUALITY CONTROL MESSAGE - The Corporate Disclosure Statement filed as an attachment to the Answer to the Complaint 46 on 2/12/2015 by Susan Sharko must be filed as a separate docket entry. Please resubmit the Corporate Disclosure Statement ONLY using the event Corporate Disclosure Statement. (eaj) (Entered: 02/12/2015) |
| 02/12/2015 | 47 | Corporate Disclosure Statement by JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER COMPANIES, INC.. (Attachments: # 1 Certificate of Service)(SHARKO, SUSAN) (Entered: 02/12/2015) |
| 02/13/2015 | 48 | AFFIDAVIT of Service for Summons and Complaint served on Elizabeth Carew on 1/22/15, filed by JAMES CHAKALOS. (KUHARSKI, MICHAEL) (Entered: 02/13/2015) |
| 02/13/2015 | 49 | AFFIDAVIT of Service for Summons and Complaint served on Elizabeth Carew on 1/22/15, filed by JAMES CHAKALOS. (KUHARSKI, MICHAEL) (Entered: 02/13/2015) |
| 02/13/2015 | 50 | AFFIDAVIT of Service for Summons and Complaint served on Doreen Haeselin on 1/21/15, filed by JAMES CHAKALOS. (KUHARSKI, MICHAEL) (Entered: 02/13/2015) |
| 02/13/2015 | 51 | AFFIDAVIT of Service for Summons and Complaint served on Christina Acevedo on 1/21/15, filed by JAMES CHAKALOS. (KUHARSKI, MICHAEL) (Entered: 02/13/2015) |
| 02/13/2015 | 52 | AFFIDAVIT of Service for Summons and Complaint served on Christina Acevedo on 1/21/15, filed by JAMES CHAKALOS. (KUHARSKI, MICHAEL) (Entered: 02/13/2015) |
| 02/17/2015 | 53 | STIPULATION AND ORDER of Dismissal. Signed by Judge Anne E. Thompson on 2/17/2015. (eaj) (Entered: 02/17/2015) |
| 02/17/2015 | | ***Civil Case Terminated. (eaj, ) (Entered: 02/17/2015) |
| 02/18/2015 | | CLERK'S QUALITY CONTROL MESSAGE - Case was closed in error. Please disregard. (eaj) (Entered: 02/18/2015) |
| 02/19/2015 | 54 | MOTION for Extension of Time to File Answer Defendant Valeant by JAMES CHAKALOS. (Attachments: # 1 proposed order)(KUHARSKI, MICHAEL) (Entered: 02/19/2015) |
| 02/19/2015 | | Set Deadlines as to 54 MOTION for Extension of Time to File Answer Defendant Valeant. Motion set for 3/16/2015 before Magistrate Judge Lois H. Goodman. The motion will be decided on the papers. No appearances required unless notified by the court. (eaj, ) (Entered: 02/19/2015) |
| 02/20/2015 | 55 | NOTICE of Appearance by KEVIN TIMOTHY SULLIVAN on behalf of CHATTEM, INC. (SULLIVAN, KEVIN) (Entered: 02/20/2015) |
| 02/24/2015 | 56 | Joint Discovery Plan by IMERYS TALC AMERICA, INC..(DOTRO, LORNA) (Entered: 02/24/2015) |
| 02/24/2015 | 57 | Letter from Lorna A. Dotro, Esq. on behalf of all parties regarding March 4, 2015 Initial Conference. (DOTRO, LORNA) (Entered: 02/24/2015) |
| 02/24/2015 | | CLERK'S QUALITY CONTROL MESSAGE - Please be advised that Joint Discovery Plan 56 submitted by Lorna Dotro on 2/24/2015 is not filed pursuant to the Local Rules of this Court. This submission will remain on the docket unless otherwise ordered by the Court. This message is for informational purposes only. (eaj, ) (Entered: 02/24/2015) |

| | | |
|---|---|---|
| 02/27/2015 | 58 | Notice of Request by Pro Hac Vice Anand Agneshwar to receive Notices of Electronic Filings. (SULLIVAN, KEVIN) (Entered: 02/27/2015) |
| 02/27/2015 | 59 | Notice of Request by Pro Hac Vice Paige H. Sharpe to receive Notices of Electronic Filings. (SULLIVAN, KEVIN) (Entered: 02/27/2015) |
| 03/01/2015 | | Pro Hac Vice counsel, PAIGE SHARPE and ANAND AGNESHWAR, has been added to receive Notices of Electronic Filing. Pursuant to L.Civ.R. 101.1, only local counsel are entitled to sign and file papers, enter appearances and receive payments on judgments, decrees or orders. (eaj) (Entered: 03/01/2015) |
| 03/03/2015 | | ATTENTION COUNSEL: The Initial Conference scheduled for 3/4/15 with Magistrate Judge Lois H. Goodman has been rescheduled to 3/18/15 at 11:00 a.m. (ij, ) (Entered: 03/03/2015) |
| 03/11/2015 | 60 | MOTION for Leave to Appear Pro Hac Vice Gene M. Williams by JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER COMPANIES, INC.. (Attachments: # 1 Certification Susan M. Sharko, # 2 Certification Gene M. Williams, # 3 Text of Proposed Order, # 4 Certificate of Service)(SHARKO, SUSAN) (Entered: 03/11/2015) |
| 03/11/2015 | 61 | MOTION for Leave to Appear Pro Hac Vice Kathleen Frazier by JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER COMPANIES, INC.. (Attachments: # 1 Certification Susan M. Sharko, # 2 Certification Kathleen Frazier, # 3 Text of Proposed Order, # 4 Certificate of Service)(SHARKO, SUSAN) (Entered: 03/11/2015) |
| 03/11/2015 | 62 | NOTICE of Appearance by JULIE LYNN TERSIGNI on behalf of JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER COMPANIES, INC. (Attachments: # 1 Certification of Service)(TERSIGNI, JULIE) (Entered: 03/11/2015) |
| 03/12/2015 | | SetDeadlines as to 60 MOTION for Leave to Appear Pro Hac Vice Gene M. Williams, 61 MOTION for Leave to Appear Pro Hac Vice Kathleen Frazier. Motion set for 4/6/2015 before Magistrate Judge Lois H. Goodman. The motion will be decided on the papers. No appearances required unless notified by the court. (eaj) (Entered: 03/12/2015) |
| 03/12/2015 | 63 | ORDER granting 61 Motion for Leave to Appear Pro Hac Vice as to Kathleen Frazier, Esq. Signed by Magistrate Judge Lois H. Goodman on 3/12/2015. (eaj) (Entered: 03/12/2015) |
| 03/12/2015 | 64 | ORDER granting 60 Motion for Leave to Appear Pro Hac Vice as to Gene M. Williams. Signed by Magistrate Judge Lois H. Goodman on 3/12/2015. (eaj) (Entered: 03/12/2015) |
| 03/18/2015 | | Text Minute Entry for proceedings held before Magistrate Judge Lois H. Goodman: Initial Pretrial Conference held on 3/18/2015. (ij, ) (Entered: 03/19/2015) |
| 03/19/2015 | 65 | NOTICE AND ORDER of Voluntary Dismissal as to VALEANT PHARMACEUTICALS NORTH AMERICA LLC, VALEANT PHARMACEUTICALS INTERNATIONAL and VALEANT PHARMACEUTICALS NORTH AMERICA terminated.. Signed by Judge Anne E. Thompson on 3/18/2015. (eaj) (Entered: 03/19/2015) |
| 03/19/2015 | | Pro Hac Vice fee: $ 150, receipt number NEW023404 Re Gene M. Williams (nr, ) (Entered: 03/19/2015) |
| 03/19/2015 | | Pro Hac Vice fee: $ 150, receipt number NEW023403 Re Kathleen Frazier (nr, ) (Entered: 03/19/2015) |
| 03/24/2015 | 66 | MOTION for Leave to Appear Pro Hac Vice Lonny Levitz, Esq. by JAMES CHAKALOS. (KUHARSKI, MICHAEL) (Entered: 03/24/2015) |
| 03/24/2015 | | Set Deadlines as to 66 MOTION for Leave to Appear Pro Hac Vice Lonny Levitz, Esq.. Motion set for 4/6/2015 before Magistrate Judge Lois H. Goodman. The motion will be decided on the papers. No appearances required unless notified by the court. (eaj) (Entered: 03/24/2015) |
| 03/25/2015 | | RESET Deadlines as to 66 MOTION for Leave to Appear Pro Hac Vice Lonny Levitz, Esq.. Motion set for 4/20/2015 before Magistrate Judge Lois H. Goodman. The motion will be decided on the papers. No appearances required unless notified by the court. (eaj) (Entered: 03/25/2015) |
| 03/27/2015 | 67 | PRETRIAL SCHEDULING ORDER: Settlement Conference set for 2/10/2016 at 02:00 PM in Trenton - Courtroom 7E before Magistrate Judge Lois H. Goodman; Telephone Conference set for 6/16/2015 at 02:30 PM before Magistrate Judge Lois H. Goodman, Plaintiff is to initiate the call; Any Motion to Amend the Pleadings or Join New Parties due by 7/24/2015; Fact Discovery due by 11/30/2015; Dispositive Motions due by 6/24/2016. Signed by Magistrate Judge Lois H. Goodman on 3/27/2015. (eaj) (Entered: 03/27/2015) |
| 04/14/2015 | 68 | STIPULATION AND ORDER of Dismissal as to Defendant Chattem, Inc.. Signed by Judge Anne E. Thompson on 4/14/2015. (kas, ) (Entered: 04/14/2015) |
| 04/17/2015 | 69 | NOTICE of Voluntary Dismissal by All Plaintiffs (KUHARSKI, MICHAEL) (Entered: 04/17/2015) |
| 04/17/2015 | 70 | NOTICE by JAMES CHAKALOS Status To The Court (KUHARSKI, MICHAEL) (Entered: 04/17/2015) |
| 04/17/2015 | 71 | NOTICE by JAMES CHAKALOS The Above Notice of Voluntary Dismissal by All Plaintiffs Was a |

| | | |
|---|---|---|
| | | Mistake (KUHARSKI, MICHAEL) (Entered: 04/17/2015) |
| 04/20/2015 | | CLERK'S QUALITY CONTROL MESSAGE - The Notices 69 & 70 submitted by Michael Kuharski on 4/17/2015 appear to be duplicates. These submissions will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (eaj) (Entered: 04/20/2015) |
| 04/30/2015 | 72 | DECLARATION Rule 26 Initial Disclosure by JAMES CHAKALOS. (KUHARSKI, MICHAEL) (Entered: 04/30/2015) |
| 05/20/2015 | 73 | AFFIDAVIT/Certification in support of discovery confidentiality order of Lorna A. Dotro by IMERYS TALC AMERICA, INC.. (Attachments: # 1 Declaration of Lorna A. Dotro, Esq. in support of Stipulate Protective Order, # 2 Text of Proposed Order)(DOTRO, LORNA) (Entered: 05/20/2015) |
| 06/01/2015 | 74 | ORDER granting 66 Motion for Leave to Appear Pro Hac Vice as to Lonny Levitz, Esq.. Signed by Magistrate Judge Lois H. Goodman on 6/1/2015. (eaj) (Entered: 06/01/2015) |
| 06/12/2015 | 75 | Letter from Status Conference Letter. (KUHARSKI, MICHAEL) (Entered: 06/12/2015) |
| 06/16/2015 | 76 | STIPULATED Discovery Confidentiality Order. Signed by Magistrate Judge Lois H. Goodman on 6/16/2015. (eaj) (Entered: 06/16/2015) |
| 06/16/2015 | 77 | TEXT ORDER setting a Telephone Conference Call for 9/16/15 at 9:30 a.m. with Magistrate Judge Lois H. Goodman. Counsel for Johnson & Johnson to initiate the call at that time. Ordered by Magistrate Judge Lois H. Goodman on 6/16/15. (ij, ) (Entered: 06/16/2015) |
| 06/16/2015 | | Text Minute Entry for proceedings held before Magistrate Judge Lois H. Goodman: Telephone Conference held on 6/16/2015. (ij, ) (Entered: 06/17/2015) |
| 07/09/2015 | 78 | MOTION for Leave to Appear Pro Hac Vice Scott A. James by JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER COMPANIES, INC.. (Attachments: # 1 Certification of Susan M. Sharko In Support of Motion for Admission Pro Hac Vice, # 2 Certification of Scott A. James In Support of Motion for Admission Pro Hac Vice, # 3 Text of Proposed Order, # 4 Certificate of Service)(SHARKO, SUSAN) (Entered: 07/09/2015) |
| 07/10/2015 | | Set Deadlines as to 78 MOTION for Leave to Appear Pro Hac Vice Scott A. James. Motion set for 8/3/2015 before Magistrate Judge Lois H. Goodman. The motion will be decided on the papers. No appearances required unless notified by the court. (kas, ) (Entered: 07/10/2015) |
| 07/17/2015 | 79 | ORDER granting 78 Motion for Leave to Appear Pro Hac Vice as to Scott A. James. Signed by Magistrate Judge Lois H. Goodman on 7/17/2015. (eaj) (Entered: 07/17/2015) |
| 07/28/2015 | | Pro Hac Vice fee: $ 150, receipt number NEW026811 Re Scott A. James (nr, ) (Entered: 07/28/2015) |
| 08/13/2015 | 80 | MOTION for Leave to Appear Pro Hac Vice of Kenneth J. Ferguson, Esq. by IMERYS TALC AMERICA, INC.. (Attachments: # 1 Certification of Local Counsel, Lorna A. Dotro, Esq. in Support of Application for Pro Hac Vice Admission of Kenneth J. Ferguson, Esq., # 2 Certification of Kenneth J. Ferguson, Esq. In Support of Application for Pro Hac Vice Admission, # 3 Certificate of Service, # 4 Text of Proposed Order)(DOTRO, LORNA) (Entered: 08/13/2015) |
| 08/13/2015 | 81 | MOTION for Leave to Appear Pro Hac Vice of Michael R. Klatt, Esq. by IMERYS TALC AMERICA, INC.. (Attachments: # 1 Certification of Local Counsel, Lorna A. Dotro, Esq. in Support of Application for Pro Hac Vice Admission of Michael R. Klatt, Esq., # 2 Certification of Michael R. Klatt, Esq. in Support of Application for Pro Hac Vice Admission, # 3 Certificate of Service, # 4 Text of Proposed Order)(DOTRO, LORNA) (Entered: 08/13/2015) |
| 08/13/2015 | | Set Deadlines as to 81 MOTION for Leave to Appear Pro Hac Vice of Michael R. Klatt, Esq., 80 MOTION for Leave to Appear Pro Hac Vice of Kenneth J. Ferguson, Esq.. Motion set for 9/21/2015 before Magistrate Judge Lois H. Goodman. The motion will be decided on the papers. No appearances required unless notified by the court. (eaj) (Entered: 08/13/2015) |
| 08/14/2015 | | MOTIONS RESET PER CLERKS ERROR: RESET Deadlines as to 81 MOTION for Leave to Appear Pro Hac Vice of Michael R. Klatt, Esq., 80 MOTION for Leave to Appear Pro Hac Vice of Kenneth J. Ferguson, Esq.. Motion set for 9/8/2015 before Magistrate Judge Lois H. Goodman. The motion will be decided on the papers. No appearances required unless notified by the court. (eaj, ) (Entered: 08/14/2015) |
| 08/19/2015 | 82 | ORDER granting 80 Motion for Leave to Appear Pro Hac Vice as to Kenneth J. Ferguson, Esq. Signed by Magistrate Judge Lois H. Goodman on 8/19/2015. (eaj) (Entered: 08/19/2015) |
| 08/19/2015 | 83 | ORDER granting 81 Motion for Leave to Appear Pro Hac Vice as to Michael R. Klatt, Esq.. Signed by Magistrate Judge Lois H. Goodman on 8/19/2015. (eaj) (Entered: 08/19/2015) |
| 09/02/2015 | 84 | ORDER Regarding Protocol for Document Format Production. Signed by Magistrate Judge Lois H. Goodman on 9/2/2015. (eaj) (Entered: 09/02/2015) |
| 09/15/2015 | 85 | Letter from Julie L. Tersigni on behalf of all parties regarding September 16, 2016 Status |

| | | | |
|---|---|---|---|
| | | Conference. (TERSIGNI, JULIE) (Entered: 09/15/2015) | |
| 09/16/2015 | | Text Minute Entry for proceedings held before Magistrate Judge Lois H. Goodman: Telephone Conference held on 9/16/2015. (ij, ) (Entered: 09/17/2015) | |
| 09/18/2015 | 86 | AMENDED PRETRIAL SCHEDULING ORDER: Telephone Conference set for 12/9/2015 at 09:30 AM before Magistrate Judge Lois H. Goodman, Defendant Johnson & Johnson is to initiate the call; Fact Discovery due by 2/29/2016; Dispositive Motions due by 9/23/2016; Further Ordering that the Settlement conference will remain the same and will be conducted on 2/10/2016 at 2:00 PM. Signed by Magistrate Judge Lois H. Goodman on 9/18/2015. (eaj) (Main Document 86 replaced on 9/22/2015) (dm). (Entered: 09/18/2015) | |
| 12/08/2015 | 87 | Letter from Julie Tersigni to Judge Goodman re 12/9/15 Conference. (TERSIGNI, JULIE) (Entered: 12/08/2015) | |
| 12/09/2015 | | Text Minute Entry for proceedings held before Magistrate Judge Lois H. Goodman: Telephone Conference held on 12/9/2015. (ij, ) (Entered: 12/10/2015) | |
| 01/07/2016 | 88 | Letter from All Parties requesting rescheduling of Settlement Conference. (DOTRO, LORNA) (Entered: 01/07/2016) | |
| 01/08/2016 | 89 | LETTER ORDER Granting the adjournment of the Settlement Conference. Counsel will be notified of the new date. ALL other dates in the 9/18/2015 Order remain the same. No other dates will be extended absent of good cause. Signed by Magistrate Judge Lois H. Goodman on 1/8/2015. (km) (Entered: 01/08/2016) | |
| 02/24/2016 | 90 | TEXT ORDER setting a Conference Call for 3/8/16 at 2:00 p.m. with Magistrate Judge Lois H. Goodman. Plaintiff's counsel to initiate the call at that time. Settlement Conference set for 7/11/16 at 10:00 a.m. with Magistrate Judge Lois H. Goodman. All parties with settlement authority to be present in person. Ex parte settlement positions due 5 days before the scheduled conference. Ordered by Magistrate Judge Lois H. Goodman on 2/24/16. (ij, ) (Entered: 02/24/2016) | |
| 03/08/2016 | | Text Minute Entry for proceedings held before Magistrate Judge Lois H. Goodman: Telephone Conference held on 3/8/2016. (ij, ) (Entered: 03/09/2016) | |
| 03/14/2016 | | ATTENTION COUNSEL: Telephone Conference Call set for 6/14/16 at 2:30 p.m. with Magistrate Judge Lois H. Goodman. Plaintiff's counsel to initiate the call at that time. (ij, ) (Entered: 03/14/2016) | |
| 04/13/2016 | 91 | MOTION for Leave to Appear Pro Hac Vice Iain L. Kennedy with Consent of Plaintiff by JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER COMPANIES, INC.. (Attachments: # 1 Certification Julie L. Tersigni, # 2 Certification Iain L. Kennedy, # 3 Text of Proposed Order, # 4 Certificate of Service)(TERSIGNI, JULIE) (Entered: 04/13/2016) | |
| 04/13/2016 | | Set Deadlines as to 91 MOTION for Leave to Appear Pro Hac Vice Iain L. Kennedy with Consent of Plaintiff. Motion set for 5/16/2016 before Magistrate Judge Lois H. Goodman. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (eaj) (Entered: 04/13/2016) | |
| 04/19/2016 | 92 | AMENDED PRETRIAL SCHEDULING ORDER: Affirmative expert reports to be served by 5/27/2016. Signed by Magistrate Judge Lois H. Goodman on 4/19/2016. (eaj) (Entered: 04/19/2016) | |
| 04/27/2016 | 93 | TEXT ORDER REASSIGNING CASE. Case reassigned to Judge Freda L. Wolfson for all further proceedings. Judge Anne E. Thompson no longer assigned to case. So Ordered by Chief Judge Jerome B. Simandle on 4/27/2016. (jjc) (Entered: 04/27/2016) | |
| 05/06/2016 | 94 | Letter from Michael J. Kuharski, Esq.. (KUHARSKI, MICHAEL) (Entered: 05/06/2016) | |
| 05/09/2016 | 95 | TEXT ORDER that any response to Plaintiff's letter dated 05/06/2016 94 should be filed by no later 05/12/2016. Ordered by Magistrate Judge Lois H. Goodman on 05/09/2016. (Gonzalez, P) (Entered: 05/09/2016) | |
| 05/10/2016 | 96 | Letter from Defendants in response to Plaintiff's request regarding discovery re 94 Letter. (DOTRO, LORNA) (Entered: 05/10/2016) | |
| 05/12/2016 | 97 | TEXT ORDER that by no later than 05/16/2016, Plaintiff is instructed to file any reply to Defendants' letter dated 05/11/2016 96 . Ordered by Magistrate Judge Lois H. Goodman on 5/12/16. (ij, ) (Entered: 05/12/2016) | |
| 05/16/2016 | 98 | Letter from Michael J. Kuharski, Esq.. (KUHARSKI, MICHAEL) (Entered: 05/16/2016) | |
| 05/26/2016 | 99 | ORDER granting 91 Motion for Leave to Appear Pro Hac Vice as to Iain L. Kennedy. Signed by Magistrate Judge Lois H. Goodman on 5/26/2016. (eaj) (Entered: 05/26/2016) | |
| 06/14/2016 | -- | Text Minute Entry for proceedings held before Magistrate Judge Lois H. Goodman: Telephone Conference held on 6/14/2016. (ij, ) (Entered: 06/14/2016) | Events since last full update |
| 06/14/2016 | -- | Pro Hac Vice fee: $ 150, receipt number NEW029922 Re Iain L. Kennedy (nr, ) (Entered: 06/14/2016) | Events since last |

| | | | |
|---|---|---|---|
| | | | full update |
| 06/17/2016 | 100 | TEXT ORDER adjourning the Settlement Conference scheduled for 7/11/16 with Magistrate Judge Lois H. Goodman. Counsel is directed to submit a joint letter by 7/15/16 reporting on the status of request for samples. Ordered by Magistrate Judge Lois H. Goodman on 6/17/16. (ij, ) (Entered: 06/17/2016) | Events since last full update |

Order documents from our nationwide document retrieval service.
- OR - Call **1.866.540.8818.**

Copyright © 2016 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMES CHAKALOS, as Personal Representative on behalf of the Estate of Janice Chakalos,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON et al.,<br><br>Defendants. | Case No. _____________ |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and any other applicable laws, Defendant Chattem, Inc. hereby gives notice of removal of this action, entitled *James Chakalos v. Johnson & Johnson et al.*, bearing Civil Action No. L-1449-14, from the Superior Court of New Jersey Law Division, Somerset County to the United States District Court for the District of New Jersey. As grounds for removal, Defendant Chattem, Inc. states as follows:

**I. REMOVAL TO THIS JUDICIAL DISTRICT IS PROPER AND TIMELY**

1. On November 5, 2014, Plaintiff James Chakalos, as Personal Representative of the Estate of Janice Chakalos, filed a Complaint against Defendant Chattem, Inc. in the Superior Court of New Jersey Law Division, Somerset County arising from alleged injuries suffered as a result of alleged use of talcum powder products. Pursuant to 28 U.S.C. § 1446(a), a true and legible copy of the Complaint is attached as Exhibit A.

2. This Notice of Removal is filed on behalf of Defendant Chattem, Inc. Defendants Johnson & Johnson, Johnson & Johnson Consumer Companies, Inc., Imerys Talc America, Inc. f/k/a Luzenac America, Inc., Valeant Pharmaceuticals North America, Valeant Pharmaceuticals

North America LLC, Valeant Pharmaceuticals International, and Sanofi US Services Inc. (the "Non-Removing Defendants") have not been served with the Summons and Complaint. Accordingly, the consent of the Non-Removing Defendants to this removal is not required. *See Brown v. Jevic*, 575 F.3d 322, 327 (3d Cir. 2009) ("[A] defendant who has not been served need not consent to removal.") (citing *Lewis v. Rego Co.*, 757 F.2d 66, 68-69 (3d Cir. 1985).

3. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b). Defendant Chattem, Inc. has received a copy of, but has not yet been served with, the Complaint. Moreover, the Complaint was filed on November 5, 2014, which is less than thirty (30) days prior to the date of this Notice.

4. No further pleadings have been filed, and no proceedings have yet occurred in the Somerset County action.

5. Venue is proper in the District Court of New Jersey because the Superior Court of New Jersey Law Division, Somerset County, where this suit was originally filed, is within the District Court of New Jersey. 28 U.S.C. §§1441(a), 1446(a).

6. Defendant Chattem, Inc. bases removal on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

## II. STATUTORY BASIS FOR JURISDICTION

7. Removal of this action is proper under 28 U.S.C. § 1441. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as it is a civil action between citizens of different states in which the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

**A. There Is Complete Diversity Between the Parties**

8. Plaintiff James Chakalos and his decedent, Janice Chakalos, are citizens of the State of New York. *See* Ex. A ¶ 1.

9. Defendants are citizens of states other than New York. *Id.* ¶¶ 2-9.

10. Defendant Johnson & Johnson is a New Jersey corporation. *Id.* ¶ 2. On information and belief, Defendant Johnson & Johnson has its principal place of business in New Jersey. Defendant Johnson & Johnson is, therefore, a citizen of the State of New Jersey.

11. Defendant Johnson & Johnson Consumer Companies, Inc. is a New Jersey corporation. *Id.* ¶ 3. On information and belief, Defendant Johnson & Johnson Consumer Companies, Inc. has its principal place of business in New Jersey. Defendant Johnson & Johnson Consumer Companies, Inc. is, therefore, a citizen of the State of New Jersey.

12. Defendant Imerys Talc America, Inc. f/k/a Luzenac America, Inc. is a Delaware corporation with its principal place of business in Georgia. *Id.* ¶ 4. Defendant Imerys Talc America, Inc. f/k/a Luzenac America, Inc. is, therefore, a citizen of the States of Delaware and Georgia.

13. Defendant Valeant Pharmaceuticals North America is a Delaware corporation. *Id.* ¶ 5. On information and belief, Defendant Valeant Pharmaceuticals North America has its principal place of business outside of New York. Defendant Valeant Pharmaceuticals North America is, therefore, a citizen of the State of Delaware but not a citizen of the State of New York.

14. Defendant Valeant Pharmaceuticals North America LLC is a Delaware limited liability company. *Id.* ¶ 6. On information and belief, Defendant Valeant Pharmaceuticals North America LLC has its principal place of business in New Jersey. Defendant Valeant

Pharmaceuticals North America LLC is, therefore, a citizen of the States of Delaware and New Jersey.

15. Defendant Valeant Pharmaceuticals International is a Delaware corporation with its principal place of business in New Jersey. *Id.* ¶ 7. Defendant Valeant Pharmaceuticals International is, therefore, a citizen of the States of Delaware and New Jersey.

16. Defendant Chattem, Inc. is a Tennessee corporation. *Id.* ¶ 8. Defendant Chattem, Inc. has its principal place of business in Tennessee. Defendant Chattem, Inc. is, therefore, a citizen of the State of Tennessee.

17. Defendant Sanofi US Services Inc. is a Delaware corporation with its principal place of business in New Jersey. *Id.* ¶ 9. Defendant Sanofi US Services Inc. is, therefore, a citizen of the States of Delaware and New Jersey.

18. The citizenships of defendants sued under fictitious names, including John Does/Jane Does 1-30 and Unknown Businesses and/or Corporation A-Z, are disregarded. 28 U.S.C. § 1441(a).

19. Because Plaintiff is a citizen of New York and Defendants are citizens of New Jersey, Delaware, Georgia, and Tennessee, complete diversity of citizenship exists between Plaintiff and all Defendants. *See* 28 U.S.C. §§ 1332 and 1441.

**B. The Amount in Controversy Requirement Is Met**

20. Although the Complaint seeks unspecified compensatory damages, it is apparent from the Complaint that the amount in controversy here more likely than not exceeds $75,000.00. *Scioscia v. Target Corp.*, No. 08-2593, 2008 WL 2775710, at *2 (D.N.J. July 14, 2008) ("[T]he removing party . . . is required to prove that the amount-in-controversy is met by a preponderance of evidence.").

21. The Complaint alleges that Janice Chakalos's use of talcum powder products caused her to "develop[] ovarian cancer and suffer[] effects attendant thereto, including her premature death." *See* Ex. A ¶ 35. The Complaint further alleges that "[a]s a direct and proximate result of these injuries, Ms. Chakalos incurred medical expense, has endured pain and suffering and loss of enjoyment of life, and wrongful death. Additionally, Plaintiff seeks damages for loss of consortium[,] loss of decedent's value to her estate, and other damages as allowed by law." *Id.* Plaintiff seeks recovery on thirteen counts, *id*. ¶¶ 89-167, and requests twelve categories of damages, including treble, exemplary, and punitive damages, *id.* ¶ 168.

22. Given the nature and extent of Plaintiff's alleged injuries and damages, including a wrongful death claim and claim for punitive damages, the Complaint clearly places at issue more than $75,000.00, exclusive of interest and costs. *See Crawford v. Barr Pharm., Inc.*, No. 07-5778, 2008 WL 4117873, at *2 (D.N.J. Aug. 29, 2008) (the removing party carried its burden when the plaintiff did not allege a specific value to his claims but sought compensatory, punitive, and treble damages relating to his allegedly suffering serious physical and emotional injuries due to ingesting the defendants' products).

**C. Removal Is Proper Because No Forum Defendant Has Been Served with Process**

23. Pursuant to 28 U.S.C. § 1441(b), this action is removable because no party in interest properly joined and served as a defendant is a citizen of New Jersey, the state in which this action was brought (a "forum defendant"). *See* 28 U.S.C. § 1441(b) (providing that non-federal question cases "shall be removable only if none of the parties in interest properly joined ***and served*** as defendants is a citizen of the State in which the action is brought") (emphasis added).

24. While a plaintiff in some circumstances can invoke Section 1441(b) to prevent removal when it has sued a defendant that resides in the forum, the rule applies only when the forum defendant has been "properly joined and served." 28 U.S.C. §1441(b). Removal accordingly is proper where there is complete diversity and no forum defendant has yet been served.

25. Courts in the District of New Jersey have applied the statute's plain language to uphold removal before service of a forum defendant. For example, in *In re Plavix Product Liability & Marketing Litigation*, No. 3:13-cv-2418-FLW, 2014 WL 4954654 (D.N.J. Oct. 1, 2014), Judge Wolfson recently denied a motion to remand where, as here, the non-forum defendants removed cases to federal court before the forum defendant was served with the complaints. In so ruling, the court found "that, so long as a properly joined forum defendant has not been served, the Removal Defendant's removal of these cases is proper under [28 U.S.C.] § 1441(b)." *Id.* at *5. "[T]he courts that have reached the opposite conclusion . . . rely on putative congressional and legislative intent, rather than the plain and unambiguous language of § 1441(b)," but "courts should be leery of going beyond the text of a statute, particularly when such text is clear and unambiguous." *Id.*

26. Numerous other New Jersey courts have likewise affirmed removals before service based on the plain language of the removal statute. *See e.g.*, *Poznanovich v. AstraZeneca Pharm. LP*, No. 11-4001, 2011 WL 6180026, at *4 (D.N.J. Dec. 12, 2011) ("The Court finds that the language of the statute is plain, and, thus, adherence to the plain language is required."); *Thomson v. Novartis Pharm. Corp.*, No. 06-6280, 2007 WL 1521138, at *4 (D.N.J. May 22, 2007) ("Plaintiffs have not convinced the Court that permitting removal prior to the time of service would be 'demonstrably at odds' with Congressional intent or create such a 'bizarre'

outcome 'that Congress could not have intended it.'") (internal citations omitted); *Yocham v. Novartis Pharm. Corp.*, No. 07-1810, 2007 WL 2318493, at *3 (D.N.J. Aug. 13, 2007) ("[U]nder the plain reading of § 1441(b), removal was not prohibited because NPC (a resident of the forum state) had not been served when it removed this case to this Court."); *Ripley v. Eon Labs Inc.*, 622 F. Supp. 2d 137, 142 (D.N.J. 2007) ("The plain language of 28 U.S.C. § 1441(b), despite the numerous policy arguments against it, permits removal of this case from the Superior Court of New Jersey to this Court."); *Jaeger v. Schering Corp.*, No. 07-3465, 2007 WL 3170125, at *3 (D.N.J. Oct. 25, 2007) ("This limitation, however, only applies to a case in which an in-state defendant has been 'properly joined and served.'").

27. Chattem, Inc. acknowledges that other courts, including in the District of New Jersey, have reached the opposite conclusion. In *Williams v. Daiichi Sankyo, Inc.*, 13 F. Supp. 3d 426, 432 (D.N.J. 2014), the court found that "permitting these non-forum Defendants to remove before the Plaintiffs are actually capable of serving the forum Defendants violates the intention of the forum defendant rule by permitting gamesmanship." *See also In re Plavix*, 2014 WL 4954654, at *4 (citing additional cases). In a number of the cases, courts have remanded where the forum defendant removed before service. *See, e.g.*, *Jones v. Johnson & Johnson*, No. 14-1379 (D.N.J. Aug. 14, 2014) (remanding a case where the removal was filed by forum defendant Johnson & Johnson); *Fields v. Organon USA Inc.*, No. 07-2922, 2007 WL 4365312, at *5 (D.N.J. Dec.12, 2007). Those cases are inapposite here where it is the non-forum defendant seeking removal. Moreover, decisions rejecting removal in this situation are contrary to the U.S. Supreme Court principle that "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material." *In re Plavix*, 2014 WL 4954654, at *5 (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005)).

28. Congress recently enacted legislation reaffirming that an action may be removed on the basis of diversity jurisdiction when a forum defendant is not properly joined or served at the time of removal. The Federal Courts Jurisdiction and Venue Clarification Act of 2011 amended the removal and remand procedures in 28 U.S.C. § 1441, but retained the key language in Section 1441(b) that bars removal only if any "of the parties in interest ***properly joined and served*** as defendants is a citizen of the State in which such action is brought." Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63 § 103, 125 Stat. 758, 760 (2011) (emphasis added); *see also Munchel v. Wyeth LLC*, No. 12-906-LPS, 2013 WL 4050072, at *3-4 (D. Del. Sept. 11, 2012) ("The undersigned judge continues to adhere to the views [on the plain language of Section 1441(b)] . . . . [T]he amendment [of the removal statute] reinforces the conclusion that Congress intended for the plain language of the statute to be followed.").

29. In the present case, because Plaintiff has not served any forum defendant, any such defendant's alleged citizenship in New Jersey is not an impediment to removal under 28 U.S.C. § 1441(b).

## III. NOTICE IS BEING SENT TO PLAINTIFF AND FILED IN STATE COURT

30. Pursuant to 28 U.S.C. § 1446(d), Defendant Chattem, Inc. shall give Plaintiff written notice of the filing of this Notice of Removal.

31. Pursuant to 28 U.S.C. § 1446(d) Defendant Chattem, Inc. will file a copy of this Notice of Removal with the Clerk of the Superior Court of New Jersey Law Division, Somerset County.

WHEREFORE, Defendant Chattem, Inc. hereby gives notice that the above-entitled state court action, formerly pending in the Superior Court of New Jersey Law Division, Somerset County has been removed to the United States District Court for the District of New Jersey.

November 11, 2014

Respectfully submitted,

/s/ Matthew Salzmann
Matthew Salzmann
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
Tel. No. (212) 715-1000
Fax No. (212) 715-1399

*Attorney for Defendant Chattem, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of November 2014, I electronically filed the foregoing Notice of Removal with the Clerk of the Court using the CM/ECF system and a true and correct copy of the foregoing was sent via FedEx to:

Michael J. Kuharski
KUHARSKI, LEVITZ & GIOVINAZZO
176 Hart Boulevard
Staten Island, NY 10301
Tel. No. (718) 448-1600
Fax No. (718) 448-1699

Cameron S. Scott
MOTLEY RICE, LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
Tel. No. (843) 216-9000

Attorneys for Plaintiff James Chakalos

/s/ Matthew Salzmann
Matthew Salzmann

*Attorney for Defendant Chattem, Inc.*

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local r les of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
James Chaka os, as Persona Representat ve on beha f of the Estate of Jan ce Chaka os

**DEFENDANTS**
Johnson & Johnson (see a so attachment)

**(b)** County of Residence of First Listed Plaintiff: out-of-state
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: M dd esex County, NJ
*(IN U.S. P )*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, Email and Telephone Number)*
M chae J. Kuharsk , Kuharsk , Lev tz & G ov nazzo, 176 Hart Bou evard, Staten Is and, NY 10301, mkuharsk @k awnyc.com, (718) 448-1600

Attorneys *(If Known)*
For Defendant Chattem, Inc.: Matthew Sa zmann, Arno d & Porter LLP, 399 Park Avenue, New York, NY 10022-4690, matthew.sa zmann@aporter.com, (212) 715-1000

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S )*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Pl and One Box for Defendant)*
*(F )*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☒ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Em
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**V. ORIGIN** *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding ☒ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
28 U.S.C. §§ 1332, 1441, 1446
Brief description of cause:
Product ab ty awsu t a eg ng njur es resu t ng from use of ta cum powder products

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(S ):*
JUDGE DOCKET NUMBER

DATE: 11/11/2014
SIG: /s/ Matthew Sa zmann

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 23 of 82

JS 44 Reverse (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. ( In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) a .

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**Civil Cover Sheet Attachment**

**Additional Defendants:**

Johnson & Johnson Consumer Companies, Inc.
Imerys Talc America, Inc. f/k/a Luzenac America, Inc.
Valeant Pharmaceuticals North America
Valeant Pharmaceuticals North America LLC
Valeant Pharmaceuticals International
Chattem, Inc.
Sanofi US Services Inc.
John Does/Jane Does 1-30
Unknown Businesses and/or Corporations A-Z

# Exhibit A

**KUHARSKI, LEVITZ & GIOVINAZZO**
**176 Hart Boulevard**
**Staten Island, NY 10301**
**(718) 448-1600**
**(718) 448-1699 (fax)**
**Attorneys for Plaintiffs**

RECEIVED/FILED
SUPERIOR COURT
NOV - 5 2014
SOMERSET COUNTY
DEPUTY CLERK

BATCH NO: 071
DATE: 11/05/2014
PAYMENT: CA / CK / MO
CK/MO #: 3003
AMOUNT: $200.00
PREPARER: ZC

| | |
|---|---|
| James Chakalos, as Personal Representative on behalf of the Estate of Janice Chakalos,<br><br>Plaintiff,<br><br>v.<br><br>Johnson & Johnson, Johnson & Johnson Consumer Companies, Inc., Imerys Talc America, Inc., f/k/a Luzenac America, Inc., Valeant Pharmaceuticals North America, Valeant Pharmaceuticals North America LLC, Valeant Pharmaceuticals International, Chattem, Inc., Sanofi US Services Inc., John Does/Jane Does 1-30 and Unknown Businesses and/or Corporations A-Z,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, SOMERSET COUNTY<br><br>Civil Action No. L-1449-14<br><br>**COMPLAINT AND JURY DEMAND** |

**COMPLAINT**
**(Jury Trial Requested)**

**COMES NOW,** the Plaintiff, by and through undersigned counsel, and files his Complaint against the Defendants, Johnson & Johnson, Johnson & Johnson Consumer Companies, Inc., Imerys Talc America, Inc., f/k/a Luzenac America, Inc., Valeant Pharmaceuticals North America, Valeant Pharmaceuticals North America LLC, Defendant Valeant Pharmaceuticals International, Chattem, Inc., Sanofi US Services Inc. , John Does/Jane Does 1-30, and Unknown Businesses and/or Corporations A-Z, and would show this Honorable Court the following in support thereof:

## I. Parties

1. The Plaintiff, James Chakalos, is a resident of New York, currently residing at 171 Brehaut Avenue, Staten Island, New York 10307. Decedent, Janice Chakalos, was also a resident of New York when she used Defendants' products, when she was diagnosed with Ovarian Cancer and at the time of her death. Mr. Chakalos was married to Ms. Chakalos when she used Defendants' products, when she was diagnosed with Ovarian Cancer and at the time of her death. Mr. Chakalos is the personal representative for Ms. Chakalos estate.

2. The Defendant, Johnson & Johnson, is a New Jersey corporation that is licensed and conducts substantial business in this State. Johnson & Johnson may be served with process of this Court via service on its registered agent, Steven M. Rosenberg, located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

3. The Defendant, Johnson & Johnson Consumer Companies, Inc., is a New Jersey corporation that is licensed and conducts substantial business in this State. Johnson & Johnson Consumer Companies, Inc. may be served with process of this Court via service on its registered agent, Johnson & Johnson, Office of the Corporate Secretary, One J&J Plaza, New Brunswick, New Jersey 08933.

4. The Defendant Imerys Talc America, Inc. f/k/a Luzenac America, Inc. is a Delaware corporation, with its principal place of business in the State of Georgia that conducts substantial business in this State. Imerys Talc America, Inc. may be served with process of this Court via service on its registered agent, Corporation Service Company, located at 830 Bear Tavern Road, West Trenton, New Jersey 08628.

5. Defendant Valeant Pharmaceuticals North America is a Delaware corporation, with its principal place of business. Valeant Pharmaceuticals North America may be served with process of this Court via service on its registered agent, The Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 08628.

6. Defendant Valeant Pharmaceuticals North America LLC is a foreign limited liability company registered in Delaware that is licensed and conducts substantial business in this state. Defendant can be served with process of this Court via service on its registered agent, The Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 08628.

7. Defendant Valeant Pharmaceuticals International is a Delaware corporation, with its principal place of business in the State of New Jersey. Valeant Pharmaceuticals International may be served with process of this Court via service on its registered agent, The Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 08628.

8. Chattem, Inc., a Sanofi Company is a Tennessee corporation. Chattem, Inc. may be served with process of this Court via service on its registered agent, Corporation service Company, 830 Bear Tavern Road, West Trenton, New Jersey, 08628. In the alternative, Chattem, Inc. may be served via Theordore K Whitfield Jr., 1715 W 38th Street, Chattanooga, TN 37409-1248.

9. Sanofi US Services Inc. f/k/a Sanofi-Aventis U.S. Inc. a/k/a Sanofi US is a Delaware corporation headquartered in Bridgewater, New Jeersey that is licensed and conducts substantial business in this State. Sanofi US can be served with process of this Court via service on its registered agent, Corporation Service Company, 830 Bear Tavern

Road, Trenton, New Jersey 08268.

10. Defendants John Does/Jane Does 1-30 are those persons, agents, employees, and/or representatives of Defendants whose conduct as described herein caused or contributed to the damages of the Plaintiff, all of whose names and legal identities are unknown to the Plaintiff at this time, but will be substituted by amendment when ascertained, individually and jointly.

11. Defendants Unknown Businesses and/or Corporations A-Z are unknown entities whose conduct as described herein caused or contributed to the damages of the Plaintiff, all of whose names and legal identities are unknown to the Plaintiff at this time, but will be substituted by amendment when ascertained, individually and jointly.

## II. JURISDICTION AND VENUE

12. This is an action for damages that exceeds the jurisdictional limits of this Court.

13. Venue in this action properly lies in New Jersey in that multiple defendants including Defendant Johnson & Johnson, Defendant Johnson & Johnson Consumer Companies, Inc., Defendant Valeant Pharmaceuticals International and Sanofi US Services Inc. are domestic corporations or have their principal place of business in New Jersey.

## III. FACTS

14. Talc is a magnesium trisilicate and is mined from the earth. Talc is an inorganic mineral. The Defendant Imerys Talc America, Inc. f/k/a Luzenac America, Inc., mined the talc at issue in this case. Luzenac America, Inc was a subsidiary of the Rio Tinto group until 2011 when it was sold to Imerys Talc America, Inc.

15. Talc is the main substance in talcum powders. Defendants, Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc., manufactured products that are in issue

in this case namely, "Johnson's Baby Powder" and "Shower to Shower". Chattem, Inc manufactured "GoldBond". All of these products are composed of almost entirely talc.

**Defendants Market Talc Products as Safe**

16. In 1893, Defendants developed Johnson's Baby Powder as a daily use powder intended to eliminate friction on the skin and to absorb unwanted excess moisture for both babies and women.

17. Johnson registered the term "Shower to Shower" as its trademark for talcum powder on March 28, 1966. After its first use of the "Shower to Shower" trademark, Johnson test-marketed its talcum powder in New Orleans and Indianapolis in late 1966. Marketing was extended to New England, the Middle and South Atlantic States and New York in May 1967. Since July 1967, distribution has been nationwide. *See Johnson & Johnson v. Colgate-Palmolive Co.*, 345 F.Supp 1216 (D. N.J. 1972).

18. Valeant Consumer Products, a division of Valeant Pharmaceuticals North America currently markets and sells "Shower to Shower" which is composed of almost entirely talc. Upon information and belief, Valeant Consumer Products acquired rights from Johnson and Johnson for "Shower to Shower" on September 28, 2012.

19. Chattem, Inc. manufacturers, markets and sells various "Gold Bond" body powders and advertises them as the "Powder with the Power." The main inactive ingredient in Gold Bond medicated powders is talc.

20. Sanofi f/k/a Sanofi-Aventis is the parent company of Chattem, Inc., the manufacturer and distributer of Gold Bond powders. Sanofi completed acquisition of Chattem, Inc. on March 11, 2010.

Case 3:14-cv-07079-FLW-LHG Document 1-2 Filed 11/11/14 Page 10 of 58 PageID: 23

21. Chattem, Inc. is the U.S. consumer healthcare division of Sanofi.

22. At all times relevant herein, a feasible alternative to the Defendants' products have existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body. Cornstarch powders have been sold and marketed for the same uses with nearly same effectiveness. In fact, Defendants Sanofi and Chattem Inc. sell talc-free Gold Bond formulas, yet continued to market talc containing powders as safe. Johnson's Baby Powder also comes in a cornstarch formula.

23. Imerys Talc f/k/a/ Luzenac America, Inc. has continually advertised and marketed talc as safe for human use.

24. Imerys Talc f/k/a/ Luzenac America, Inc. supplies customers with material safety data sheets for talc. These material safety data sheets are supposed to convey adequate health and warning information to its customers.

25. Since Baby Powder's introduction, Defendants have consistently marketed it for use on women to maintain freshness and cleanliness. Historically, the Baby Powder label and advertising encouraged women to dust themselves with the Baby Powder daily to mask odors.

26. Traditionally, "Johnson's Baby Powder" has been a symbol of freshness, cleanliness, and purity. During the time in question, the Johnson & Johnson Defendants advertised and marketed its product as the beacon of "freshness" and "comfort", eliminating friction on the skin, absorbing "excess wetness" helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild". The Defendants compelled women through advertisements to dust themselves with its product to mask odors. The bottle of "Johnson's Baby Powder" specifically targets women by stating, "For you, use every

day to help feel soft, fresh, and comfortable."

27. Although the label has changed over time, the message is the same: that the product is safe for use on woman as well as babies. The Baby Powder label currently states that "Johnson's Baby Powder is designed to gently absorb excess moisture helping skin feel comfortable. Our incredibly soft, hypoallergenic, dermatologist and allergy-tested formula glides over skin to leave it feeling delicately soft and dry while providing soothing relief." Defendants instruct consumers on the product labeling to "Shake powder directly into your hand, away from the face, before smoothing on the skin."

28. Through other marketing, including on their website for Johnson's Baby Powder, Defendants similarly encouraged women to use the product daily. Defendants state that Johnson's Baby powder "keeps skin feeling soft, fresh and comfortable. It's a classic. Johnson's Baby Powder helps eliminate friction while keeping skin cool and comfortable. It's made of millions of tiny slippery plates that glide over each other to help reduce the irritation caused by friction." Under a heading "How to Use," "For that skin that feels soft, fresh and comfortable, apply Johnson's Baby Powder close to the body, away from the face. Shake the powder into your hand and smooth onto skin." Under a heading "When to use," Defendants recommend that consumers "Use anytime you want skin to feel soft, fresh and comfortable. For baby, use after every bath and diaper change."

29. Defendants seek to convey an image as safe and trusted family brand. For example, on their website for Johnson's Baby Powder, Defendants state the product is "Clinically proven to be safe, gentle and mild."

30. Defendants also have a website, www.safetyandcarecommitment.com devoted to "Our Safety & Care commitment." According to Defendants, "safety is our legacy" and "[y]ou

have our commitment that every beauty and baby care product from the Johnson & Johnson Family of Consumer Companies is safe and effective when used as directed." Defendants market a "Five-Level Safety Assurance Process," which they describe as follows: "for decades, ours has been one of the most thorough and rigorous product testing processes in our industry –to ensure safety and quality of every single product we make." Defendants' so-called "Promise to Parents and their Babies" includes that "[w]hen you bring our baby care products into your home, you can be assured of our commitment to the safety of your family and families around the world."

31. The website also touts the safety of talc stating that "[f]ew ingredients have demonstrated the same performance, mildness and safety profile as cosmetic talc". Nowhere do Defendants warn of the increased risk of ovarian cancer linked to the use of Johnson's® Baby Powder.

32. On May 12, 2014, the Johnson & Johnson Defendants issued the following statement: "We have no higher responsibility than the health and safety of consumers who rely on our products. It is important for consumers to know that the safety of cosmetic talc is supported by decades of scientific evidence and independent peer-reviewed studies." *See* Fox 32 Chicago, *Popular Baby Powder Allegedly Caused Cancer In Pro-Figure Skater* (May 12, 2014), *available at*: http://www.myfoxchicago.com/story/25497847/popular-baby-powder-allegedly-caused-cancerin-pro-figure-skater.

33. During the time in question, the Johnson & Johnson Defendants also advertised and marketed its product "Shower to Shower" as safe for use by women as evidenced in its slogan "A sprinkle a day keeps odor away", and through advertisements such as "Your body perspires in more places than just under your arms. Use SHOWER to SHOWER

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 38 of 82

to feel, dry, fresh and comfortable throughout the day" and "SHOWER to SHOWER can be used all over your body."

34. During the time in question Defendant, Chattem, Inc. advertised and marketed its product "Gold Bond" as safe for use. Such advertising included "After shower, bath or exercise, simply apply Gold Bond Medicated Body Powder for lasting deodorant protection and that cool, refreshing feeling. You'll understand right away why people have trusted Gold Bond Powder to provide genuine medicated relief since 1908. Gold Bond Medicated Body Powder does what it says: Cools. Absorbs. Relieves. Works."

**Plaintiff Used Defendants' Products believing they were safe**

35. Ms. Chakalos used "Johnson's Baby Powder", "Shower to Shower" and "GoldBond Powder" (hereinafter "the PRODUCTS") to dust her perineum for feminine hygiene purposes from her childhood until approximately 2011 as she believed they were safe. This was an intended and foreseeable use of the Defendants' products based on the advertising, marketing, and labeling of the products by the Defendants. Ms. Chakalos developed ovarian cancer and suffered effects attendant thereto, including her premature death, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Ms. Chakalos incurred medical expenses, has endured pain and suffering and loss of enjoyment of life, and wrongful death. Additionally, Mr. Chakalos seeks damages for loss of consortium loss of decedent's value to her estate, and other damages as allowed by law.

36. In or around November 2010, Ms. Chakalos was diagnosed with ovarian cancer. At the time of her diagnosis Ms. Chakalos was sixty three (63) years old and did not have any risks factors, genetic or otherwise, for the disease.

37. After entering hospice care for ovarian cancer, Ms. Chakalos passed away on November 15, 2012.

**Defendants Knew of the Increased Risk of Ovarian Cancer From Use of Talcum Powder in the genital area**

38. As detailed below, beginning in at least 1982, Defendants were aware of several studies that demonstrated that women who used talc-based baby powder in the genital area had a significant increased risk of ovarian cancer. Since 1982, there have been 21 studies by doctors and scientists throughout the world (including 19 case-control studies, 1 cohort study, and 1 combined case-control and cohort study) that reported an elevated risk for ovarian cancer with genital talc use. The majority of these studies show a statistically significant increased risk of ovarian cancer.

39. However, Defendants do not warn or inform consumers anywhere, including on the product labeling or in its marketing or advertising for the product, that use of their products may be harmful to health, including significantly increasing the risk of ovarian cancer.

**Scientific Evidence linking Talcum Powder to Ovarian Cancer**

40. Research done as early as 1961 has shown that particles, similar to talc, can translocate from the exterior genital area to the ovaries in women. Egi GE, Newton M. "The transport of carbon particles in the human female reproductive tract." *Fertility Sterility* 12:151-155, 1961.

41. Because of the potential for transmission, researchers remained concerned about the carcinogenic nature of talc and the effects of talc use. In 1968, a study concluded that

"[a]ll of the 22 talcum products analyzed have a … fiber content… averaging 19%. The fibrous material was predominantly talc but contained minor amounts of tremolite, anthophyllite, and chrysotile [asbestos-like fibers] as these are often present in fibrous talc mineral deposits…. Unknown significant amounts of such materials in products that may be used without precautions may create and unsuspected problem". Cralley LJ, Key MM, Groth DH, Lainhart WS, Ligo, RM. "Fibrous and mineral content of cosmetic talcum products." *Am Industrial Hygiene Assoc J.* 29:350-354, 1968. In a 1976 follow up study concluded that "[t]he presence in these products of asbestiform anthophyllite and tremolite, chrysotile, and quartz indicates the need for a regulatory standard for cosmetic talc…. We also recommend that evaluation be made to determine the possible health hazards associated with the use of these products." Rohl AN, et al, "Consumer talcums and powders: mineral and chemical characterization." *J Toxicol Environ Health* 2:255-284, 1976.

42. In 1971, the first study was conducted that suggested an association between talc and ovarian cancer. This study was conducted by WJ Henderson and others in Cardiff, Wales. That study found talc particles "deeply embedded" in 10 of 13 ovarian tumors, 12 of 21 cervical tumors, one primary carcinoma of the endometrium and 5 of 12 "normal" ovaries from women with breast cancer. Henderson, W.J., et al. "Talc and carcinoma of the ovary and cervix", 78(3) J. Obstet, Gynaecol. Br. Commonw. 266-272, 1971.

43. The scientific evidence linking talc use and ovarian cancer continued to build. In 1982, the first epidemiologic study was performed by Dr. Daniel Cramer et al. on talc powder use in the female genital area. This National Institutes of Health (NIH) funded case-control study found a statistically significant 92% increased risk in ovarian cancer with

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 43 of 82

women who reported genital talc use. Additinoally, it found that talc application directly to the genital area around the time of ovulation might lead to talc particles becoming deeply imbedded in the substance of the ovary and perhaps causing foreign body reaction capable of causing growth of epithelial ovarian tissue. This study proved an epidemiologic association between the use of cosmetic talc in genital hygiene and ovarian cancer. Cramer OW, Welch WR, Scully RE, Wojciechowski CA. "Ovarian cancer and talc: a case control study." *Cancer* 50: 372-376, 1982.

44. In 1983, Partricia Hartge and Robert Hoover of the National Cancer Institute and Linda Lester and Larry McGowan of the George Washing University Medical Center, performed a case-control interview study regarding ovarian cancer. Although no association was proven due to the small sample size, the study found an "excess relative risk" of 2.5 (95% CI=0.7 to 10.0) of ovarian cancer for women who use talcum powder in the genital area. Hartge P, et al. "Talc and ovarian cancer." Letter JAMA 250: 1844, 1983

45. In 1988, a case control study of 188 women diagnosed with epithelial ovarian cancer and 539 control women found that 52% of the cancer patients habitually used talcum powder on the perineum before their cancer diagnosis. The study showed that women using talc daily on their perineum had 1.45 times the risk of ovarian cancer then women that did not use talc daily, showing a positive dose-response relationship. *See* Whittemore AS, et al., "Personal and environmental characteristics related to epithelial ovarian cancer. II. Exposures talcum powder, tobacco, alcohol, and coffee." *Am J Epidemiol* 1128:1228-1240, 1988.

46. A case control study conducted in 1989 found similar results. The study looked at 235 women diagnosed with epithelial ovarian cancer and 451 controls and found an increased

risk in ovarian cancer with women who reported genital talcum powder use more than once per week. Booth, M. et al., "Risk factors for ovarian cancer: a case-control study," *Br. J. Cancer*, 592-598, 1989.

47. Another case control study conducted in 1989 by Bernard Harlow, et al., of Harvard Medical School at Brigham and Women's Hospital, found an increased risk of ovarian cancer generally from genital talc use after bathing and found a statistically significant increased risk of ovarian cancer from women that used talc-containing powders in combination with deodorizing powders on their perineum. This study also found positive dose-response relationship. Harlow, B.L. & Weiss, N.S., "A case-control study of borderline ovarian tumors: the influence of perineal exposure to talc", Am. J. Epidemiol., 390-394 (1989).

48. A 1992 study, also by Dr. Harlow, found that frequent and long term talc use directly on the genital area during ovulation increased a woman's risk of ovarian cancer threefold. The study also found "[t]he most frequent method of talc exposure was use as a dusting powder directly to the perineum (genitals) Brand or generic 'baby powder' was used most frequently and was the category associated with a statistically significant risk for ovarian cancer." This study looked at 235 ovarian cancer cases and compared to 239 controls. This study concluded that "given the poor prognosis for ovarian cancer, any potentially harmful exposures should be avoided, particularly those with limited benefits. For this reason, we discourage the use of talc in genital hygiene, particularly as a daily habit." Harlow BL, Cramer DW, Bell DA, Welch WR. "Perineal exposure to talc and ovarian cancer risk." *Obstet Gynecol* 80: 19-26, 1992.

49. Also in 1992, a case-control study was conducted by Karin Rosenblatt, et. al., from the Department of Epidemiology of John's Hopkins School of Hygiene and Public Health. This study showed that the development of ovarian cancer may be associated with genital fiber exposure (especially talc on sanitary napkins) finding a relative risk of 4.8 for talc use on sanitary napkins. Rosenblatt KA, Szklo M, Rosenshein NB. "Mineral fiber exposure and the development of ovarian cancer." *Gynecol Onco/* 45:20-25, 1992.

50. Additionally, a another 1992 case-control study conducted by Yong Chen, et al., of 112 diagnosed epithelial ovarian cancer cases and 224 age-matched community controls, found an elevated risk for ovarian cancer for women who applied talc-containing dusting powder to the lower abdomen and perineum for longer than 3 months. Yong Chen et al., "Risk Factors for Epithelial Ovarian Cancer in Beijing, China", Int. J. Epidemiol., 23-29 (1992).

51. In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity. The study found "some evidence of carcinogenic activity in male rats" and "clear evidence of carcinogenic activity in female rats." Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers. National Toxicology Program. "Toxicology and carcinogenesis studies of talc (CAS No 14807-96-6) in F344/N rats and B6C3F 1 mice (Inhalation studies)." *Technical Report Series No 421,* September 1993.

52. In 1995, a case control study was conducted in Australia by David Purdie, et al., involving over 1600 women. This was the largest study of its kind to date. This study found a statistically significant 27% increased risk in ovarian cancer for women who regularly use talc in the region of the abdomen or perineum. Purdie, D., et al., "Reproductive and other

factors and risk of epithelial ovarian cancer: an Australian case-control study. Survey of Women's Health Study Group", 62 (6) Int. J. Cancer 678-684 (1995).

53. In 1996, a case-control study similarly found a statistically significant increased risk of ovarian cancer in women who used talc-based powders in their genital area. *See* Shushan, A., et al, "Human menopausal gonadotropin and the risk of epithelial ovarian cancer", 65 (1) Fertil. Steril. 13-18 (1995).

54. In 1996, the condom industry stopped dusting condoms with talc due to the health concerns of ovarian cancer. "Concern about talc as an ovarian carcinogen goes back 50 years in the medical literature. By the 1970s, evidence was mounting that talc particles might migrate into a woman's fallopian tubes where they could cause scarring and irritation in the ovaries. Scientists believed in some cases that the scarring led to infertility or cancer." McCullough, Marie, "Women's health concerns prompt condom makers to stop using talc", Knight Ridder, Tribune News Service, January 10, 1996.

55. In 1997, a case-control study of 313 women with ovarian cancer and 422 without this disease found that the women with cancer were more likely to have applied talcum powder to their external genitalia area. Women using these products had a statistically signfiicant 50% to 90% higher risk of developing ovarian cancer. Cook LS, Kamb ML, Weiss NS. "Perineal powder exposure and the risk of ovarian cancer". *Am J Epidemiol*, 145: 459-465 (1997).

56. In 1997, a case-control study was conducted by Stella Chang and Harvey Risch from the Department of Epidemiology and Public Health, Yale University School of Medicine which included over 1,000 women. The study found a statistically significant increased risk for ovarian cancer for women who applied talc via sanitary napkins to their perineum.

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 48 of 82

The study indicated that "Commercial talc substitutes often replace talc with cornstarch. Furthermore, women may choose to powder or dust with cornstarch instead of talc. When cornstarch was assessed in relation to risk of ovarian carcinoma, no associations were found." The study concluded, "The results of this study appear to support the contention that talc exposure increases risk of ovarian carcinoma. Dusting with talcum powder is not an unusual practice for women, and, given the heterogeneity of the etiology and course of ovarian carcinoma, any possible harmful practices, particularly those with little benefit, should be deliberated." Chang, S. & Risch, H.A., "Perineal talc exposure and risk of ovarian carcinoma", 79 (12) Cancer 2396-2401 (1997).

57. In a 1998 case-control study conducted in Canada by Beatrice Godard, et al., an increased risk of ovarian cancer was found in women who used talc-based powders on their perineum. Godard, B., et al., *Risk factors for familial and sporadic ovarian cancer among French Canadians: a case-control study*, 179 (2) Am. J. Obstet. Gynecol. 403-410 (1998).

58. In 1999, Dr. Cramer conducted funded case-control study of 563 women newly diagnosed with epithelial ovarian cancer and 523 control women. The study found a statistically significant 60% increased risk of ovarian cancer in women that used talc-based body powders on their perineum. "We conclude that there is a significant association between the use of talc in genital hygiene and risk of epithelial ovarian cancer that, when viewed in perspective of published data on this association, warrants more formal public health warnings." The study was funded by a grant from the National Cancer Institute (NCI). Cramer, D.W., et al, "Genital talc exposure and risk of ovarian cancer", 81(3) Int. J. Cancer 351-356 (1999).

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 49 of 82

59. In 2000, Roberta Ness, et al., from University of Pennsylvania, produced a case control study of over 2,000 women. This study found a statistically significant 50% increased risk of ovarian cancer from genital talc use in women. The study also found that talc causes inflammation and that inflammation contributes to cancer cell development. Ness, R.B., et al., "Factors related to inflammation of the ovarian epithelium and risk of ovarian cancer", 11 (2) Epidemiology 111-117 (2000).

60. Also in 2000, a prospective cohort study, considered to be the most informative study to date, found a 40% increase in invasive serous cancers from women who applied talcum powder to their perineum. Getrg DM, et al. Prospective study of talc use and ovarian cancer. *J Natl Cancer Inst;* 2000: 92: 249-252.

61. In 2003, a meta-analysis was conducted which re-analyzed data from 16 studies published prior to 2003 found a 33% increase in ovarian cancer risk among talc users. Huncharek M, et al. "Perineal application of cosmetic talc and risk of invasive epithelial ovarian cancer: a meta-analysis of 11,933 subjects from sixteen observational studies". *Anticancer Res.*, 23: 1955-60 (2003).

62. In 2004, a case-control study of nearly 1400 women from 22 counties was performed in Central California. This study found a statistically significant 37% increased risk of epithelial ovarian cancer from women's genital talc use. The study also found a 77% increased risk of serous invasive ovarian cancer from women's genital talc use. The study looked at women's use of cornstarch powders and found no increased risk in ovarian cancer in women who used these types of powders on the perineum as "Cornstarch is also not thought to exert the same toxicologic reaction in human tissue as does talc." This study concluded by stating that "users should exercise prudence in reducing or eliminating use.

In this instance, the precautionary principle should be invoked, especially given that this is a serious form of cancer, usually associated with a poor prognosis, with no current effective screening tool, steady incidence rates during the last quarter century and no prospect for successful therapy. Unlike other forms of environmental exposures, talcum powder use is easily avoidable." Mills, P.K., et al., "Perineal talc exposure and epithelial ovarian cancer risk in the Central Valley of California", 112 Int. J. Cancer 458-64 (2004).

63. Interestingly, this study also found a 54% increased risk in ovarian cancer from talc use in women who had not undergone a tubal ligation, whereas the study found no impact on women who had their tubes tied. Because it had been found in previous studies that talc particles migrate up the fallopian tubes in women this finding provided strong evidence to support the idea that talc is a carcinogen. *Id.*

64. In 2008, Margaret Gates performed a combined study of over 3,000 women from a New England-based case-control study and a prospective Nurses' Health Study with additional cases and years of follow up from these studies (the "Gates Study"). This study was funded by the National Cancer Institute (NCI), and found a general 36% statistically significant increased risk of epithelial ovarian cancer from genital talc use. A 60% increased risk of the serous invasive subtype was also found. Dr. Gates found a strong and positive dose-response relationship whereby increased risk was seen with higher talc usage in women. Dr. Gates stated that these latest results "provide additional support for a main effect of genital talc exposure on epithelial ovarian cancer." She also stated that "the finding of highly significant trends between increasing frequency of use and risk 'strengthens the evidence of an association, because most previous studies have not observed a dose response.'" It was concluded that, "We believe that women should be advised not to use

talcum powder in the genital area, based on our results and previous evidence supporting an association between genital talc use and ovarian cancer risk. Physicians should ask the patient about talc use history and should advise the patient to discontinue using talc in the genital area if the patient has not already stopped." Dr. Gates further stated that "An alternative to talc is cornstarch powder, which has not been shown to increase ovarian cancer risk, or to forgo genital powder use altogether." Gates, M.A., et al., "Talc Use, Variants of the GSTM1, GSTT1, and NAT2 Genes, and Risk of Epithelial Ovarian Cancer", 17 (9) Cancer Epidemiology, Biomarkers & Prev. 2436-2444 (2008).

65. In October of 2008, Michael Thun, Vice-President of Epidemiology and Surveillance Research at the American Cancer Society commented on the Gates Study. He stated the dose-response relationship between talc and ovarian cancer had finally been satisfied by this study. Dr. Thun said, "There are very few modifiable risk factors for ovarian cancer. The main one is the use of oral contraceptives, which has been clearly established to lower the risk for ovarian cancer. Others include tubal ligation, hysterectomy, and parity. Then there are factors that 'probably' increase the risk for ovarian cancer, and this is where talc fits in, alongside asbestos, postmenopausal hormone therapy, and radiation." Chustecka, Zosia & Lie, Desiree, "Talc Use in Genital Area Linked to Increased Risk for Ovarian Cancer", Medscape Medical News (2008).

66. In 2008, Melissa Merritt, from the Australian Cancer Study (Ovarian Cancer) and Australian Ovarian Cancer Study Group, conducted a case-control study of over 3,000 women where a statistically significant increased risk of ovarian cancer for women who used talc on their perineum was confirmed. This study also confirmed a statistically significant increased risk of ovarian cancer of a serous subtype in women who used talc on

their perineum. Merritt, M.A., et al., "Talcum powder, chronic pelvic inflammation and NSAIDs in relation to risk of epithelial ovarian cancer", 122 (1) Int. J. Cancer 170-176 (2008).

67. In 2009, a case-control study of over 1,200 women found the risk of ovarian cancer increased significantly with increasing frequency and duration of talc use. The study found an overall statistically significant 53% increased risk of ovarian cancer from genital talc use. The study also found a 108% statistically significant increased risk of ovarian cancer in women with the longest duration and most frequent talc use. The study concluded by stating, "that risk of ovarian cancer is significantly associated with talc use and with a history of endometriosis, as has been found in recent studies." Wu, A.H., et al., "Markers of inflammation and risk of ovarian cancer in Los Angeles County", 124 (6) Int. J. Cancer 1409-1415 (2009).

68. Additionally, various meta-analyses have been conducted that found positive associations between the use of talcum powder in the genital area and ovarian cancer. Harlow, B.L. et al., *Perineal exposure to talc and ovarian cancer risk*, Obstet. Gynecol, 19-26 (1992); Gross, A.J. & Berg, P.H., *A meta-analytical approach examining the potential relationship between talc exposure and ovarian cancer*, 5 (2) J. Expo. Anal. Environ. Epidemiol. 181-195 (1995). Huncharek, M., et al., "Perineal application of cosmetic talc and risk of invasive epithelial ovarian cancer: a meta-analysis of 11,933 subjects from sixteen observational studies", 23 Anticancer Res. 1955-60 (2003).

**<u>Leading Authorities Agree on the Link Between Ovarian Cancer and Perineal Use of Talc Powder</u>**

69. On November 17, 1994, the Cancer Prevention Coalition joined by Chair and National Advisor of the Ovarian Cancer Early Detection and Prevention Foundation along with

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 53 of 82

members of the (OCEDPF) filed a "Citizen Petition Seeking Carcinogenic Labeling on All Cosmetic Talc Products" stating that research dating back to 1961 had shown that cosmetic grade talc could translocate to the ovaries in women and increase the risk of developing ovarian cancer. This petition was submitted to the Commissioner of the Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act. The agency action requested was that the FDA take the following action: "(1) Immediately require cosmetic talcum powder products to bear labels with a warning such as "Talcum powder causes cancer in laboratory animals. Frequent talc application in the female genital area increases the risk of ovarian cancer".

70. In February of 2006, the International Association for the Research of Cancer (IARC) part of the World Health Organization published a paper whereby they classified perineal use of talc-based body powder as a "Group 2B" human carcinogen. IARC which is universally accepted as the international authority on cancer issues concluded that studies from around the world consistently found an increase risk in ovarian cancer in women from perineal use of talc. IARC found that between 16-52% of women in the world were using talc to dust their perineum and found increase risk of ovarian cancer in women talc users ranging from 30-60%. IARC concluded with this "Overall evaluation" : "Perineal use of talc-based body powder is possibly carcinogenic to humans (Group 2B)."

71. In 2006, the Canadian government under The Hazardous Products Act and associated Controlled Products Regulations classified talc as a "D2A," "very toxic," "cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A".

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 54 of 82

72. In May 2008, the CPC, joined by its chairman and numerous other physicians and chairs of public health and medical associations, submitted a citizen's petition "seeking a cancer warning on cosmetic talc products.[1]" ***The petition sought to require all cosmetic talc products to bear labels with warnings*** such as, "Frequent application of talcum powder in the female genital area substantially increases the risk of ovarian cancer" or "Frequent talc application in the female genital area ***is responsible*** for major risks of ovarian cancer." (emphasis added). The petition cited numerous studies and publications and sought a hearing to present scientific evidence.

73. As of today, both the National Cancer Institute and American Cancer Society list genital talc use as a "risk factor" for ovarian cancer.

**Defendants Awareness of the Dangers of Talcum Powder**

74. Upon information and belief, shortly after Dr. Cramer's 1982 study was published, Dr. Bruce Semple of Johnson & Johnson contacted and visited Dr. Cramer about his study. Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a warning on its talcum powders about the ovarian cancer risks so that women can make an informed decision about their health.

75. The Johnson & Johnson Defendants publicly recognized the studies linking the use of its product to ovarian cancer. On August 12, 1982, in a New York Times article entitled "Talcum Company Calls Study on Cancer Link Inconclusive" the Defendants admitted

[1] The petition was submitted on behalf of: Samuel S. Epstein, M.D., Chairman, CPC, and Professor emeritus Occupational and Environmental Medicine, University of Illinois at Chicago School of Public Health; Peter Orris, M.D., Professor and Chief of Service, University of Illinois at Chicago Medical Center; Quentin Young, M.D., Chairman, Health and Medicine Policy Research Group, Chicago; Rosalie Bertell, Ph.D., International Association for Humanitarian Medicine, Scientific Advisor to the International Institute of Concern for Public Health, Toronto, and the International Science Oversight Board of the Organic Consumers Association, Washington, D.C.; and Ronnie Cummins, National Director of the Organic Consumers Association.

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 55 of 82

being aware of the 1982 Cramer et al. article that concluded women were three (3) times more likely to contract ovarian cancer after daily use of their talcum powder in the genital area.

76. In 1992, after these various studies, the Personal Care Products Council f/k/a Cosmetic, Toiletry and Fragrance Association (CTFA) created the Talc Interested Party Task Force to defend the talc industry and help with publication relations and talking points for press releases regarding the connection between talc and ovarian cancer. Defendants Johnson & Johnson, Luzenac and Sanofi are members of this organization. Upon information and belief, this organization lobbied various organizations including the National Toxicology Program to prevent talc from being labeled as a carcinogen.

77. On November 10, 1994, the Cancer Prevention Coalition ("CPC") mailed a letter to then J&J's CEO, Ralph Larson, informing Defendants that studies as far back as 1960's "show[] conclusively that the frequent use of talcum powder in the genital area poses a serious risk of ovarian cancer." The letter cited a study by Dr. Bernard Harlow from Harvard Medical School confirming this fact and quoted a portion of the study where Dr. Harlow and his colleagues discouraged the use of talc in the female genital area. The letter further stated that 14,000 women per year die from ovarian cancer and that this type of cancer is very difficult to detect and has a low survival rate. The letter concluded by requesting that Defendants withdraw talc products from the market because of the alternative of cornstarch powders, or at a minimum, place warning information on its talc-based body powders about the ovarian cancer risk they pose

78. On September 17, 1997, Alfred Wehner a toxicology consultant retained by Defendants, wrote a letter to Michael Chudkowski, manager of Pre-Clinical Toxicology at Johnson &

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 56 of 82

Johnson Consumer Products, Inc., stating that on three separate occasions the Talc Interested Party Task Force (TIPTF) of the Cosmetic, Toiletry, and Fragrance Association (CTFA) which included Johnson & Johnson Defendants, Luzenac and Sanofi, had released false information to the public about the safety of talc. Specifically addressing a November 17, 1994, statement released by the CTFA, Dr. Wehner said the following:

> The response statement dated November 17, 1994, is just as bad. The second sentence in the third paragraph reads: "The workshop concluded that, although some of these studies suggested a weak association might exist, when taken together the results of the studies are insufficient to demonstrate any real association." This statement is also inaccurate, to phrase it euphemistically. At that time there had been about 9 studies (more by now) published in the open literature that did show a statistically significant association between hygienic talc use and ovarian cancer. Anybody who denies this risks that the talc industry will be perceived by the public like it perceives the cigarette industry: denying the obvious in the face of all evidence to the contrary.
>
> The workshop did not conclude that "the results of the studies are insufficient to demonstrate any real association." As pointed out above, a "real" statistically significant association has been undeniably established independently by several investigators, which without doubt will be readily attested to by a number of reputable scientists/clinicians, including Bernard Harlow, Debra Novotny, Candace Sue Kasper, Debra Heller, and others.

79. In 2002, E. Edward Kavanaugh, The President of The Cosmetic, Toiletry, and Fragrance Association (CTFA), wrote a letter to Dr. Kenneth Olden, Director of the National Toxicology Program (NTP) and National Institute of Environmental Health Sciences, U.S. Department of Health and Human Services, in an attempt to stop the NTP from listing cosmetic talc as a carcinogen in an upcoming report. The NTP had already nominated cosmetic talc for this classification. Upon information and belief, in this letter the CTFA admitted that talc was "toxic", that "some talc particles... can reach the human ovaries", and acknowledge and agreed that prior epidemiologic studies have concluded that talc increases the risk of ovarian cancer in women.

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 57 of 82

80. In 2006, Imerys began placing an ovarian cancer warning on its Material Safety Data Sheets (MSDS) it provides to its talc customers, including various Defendants. These MSDSs not only provided the warning information about the IARC classification but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc as well. At the very least, the Johnson & Johnson Defendants would have received these MSDSs. None of the Defendants passed this warning information on to the consumers. On September 26, 2012, the corporate representative of Imerys testified in open court that his company exclusively supplied the Johnson & Johnson Defendants with talc used for its Baby Powder product and that ovarian cancer is a potential hazard associated with a women's perineal use of talc-based body powders, like Defendants' Baby Powder.

81. On October 19, 2012, Johnson & Johnson Defendants' former in-house toxicologist and current consulting toxicologist, Dr. John Hopkins, testified on Defendants' behalf that Defendants "[are] and were aware of . . . all publications related to talc use and ovarian cancer."

**<u>Defendants Failed to Warn Consumers and the Public about the Risks of Using Talcum Powder</u>**

82. The Defendants had a duty to know and warn about the hazards associated with the use of its products.

83. Despite the mounting scientific and medical evidence regarding talc use and ovarian cancer that has developed over the past several decades, none of Defendants' warnings on the product label or in other marketing informed Plaintiffs that use of the product in the genital area, as was encouraged by Defendants, could lead to an increased risk of ovarian cancer. For example, the only warnings on the Baby Powder label are to "Keep powder

away from child's face to avoid inhalation, which can cause breathing problems," and to "[a]void contact with eyes." The label also states: "SAFETY TIP: Keep out of reach of children. Do not use if quality seal is broken." Defendants provide similar warnings on their website: "For external use only. Keep out of reach of children. Close tightly after use. Do not use on broken skin. Avoid contact with eyes. Keep powder away from child's face to avoid inhalation, which can cause breathing problems."

84. The Johnson & Johnson Defendants continue to represent on the labeling and other marketing that Johnson's® Baby Powder is "clinically proven mildness," "clinically proven to be safe, gentle and mild," and "that the safety of cosmetic talc is supported by decades of scientific evidence and independent peer reviewed studies."

85. The Defendants failed to inform its customers and end users of its products of a known catastrophic health hazard associated with the use of its products.

86. In addition, the Defendants procured and disseminated false, misleading, and biased information regarding the safety of its products to the public.

87. As a result of the Defendants calculated and reprehensible conduct the Plaintiff was injured and suffered damages namely ovarian cancer which has required multiple surgeries and treatments.

88. Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably known risks. Plaintiffs and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on Defendants' representations.

### Causes of Action-Theories of Recovery

### COUNT ONE - STRICT LIABILITY – FAILURE TO WARN
### (All Defendants)

89. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

90. At all pertinent times, Imerys Talc f/k/a Luzenac America, Inc mined and sold talc to the Johnson & Johnson Defendants, which it knew was then packaging and selling to consumers as Johnson's Baby Powder and "Shower to Shower", and it knew that consumers of these products were using it to powder their perineal regions.

91. At all pertinent times, Imerys Talc knew or should have known of the unreasonably dangerous and carcinogenic nature of the talc it was selling to the Johnson & Johnson Defendants, especially when used in a women's perineal region, and it know or should have known that Johnson & Johnson was not warning its consumers of this danger.

92. At all pertinent times, the Johnson & Johnson Defendants, the Valeant Defendants, Sanofi and Chattem, Inc. were manufacturing, marketing, testing, promotion, selling and/or distributing the PRODUCTS in the regular course of business.

93. At all pertinent times, Ms. Chakalos used the PRODUCTS to powder her perineal area, which is a reasonably foreseeable use and in a manner normally intended by the Defendants.

94. At all pertinent times, all Defendants in this action knew or should have known that the use of talcum powder based products in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960's.

95. At all pertinent times, including the time of sale and consumption, the PRODUCTS, when put to the aforementioned reasonably foreseeable use, were in an unreasonably dangerous

and defective condition because they failed to contain adequate and proper warnings and/or instructions regarding the increased risk of ovarian cancer associated with the use of the PRODUCTS by women to powder their perineal area. Defendants themselves failed to properly and adequately warn and instruct Plaintiffs as to the risks and benefits of the PRODUCTS given Plaintiffs need for this information. Had Ms. Chakalos received a warning that the use of the PRODUCTS in her genital area or on sanitary napkins would have significantly increased her risk of ovarian cancer, she would not have used the PRODUCTS in that manner. Her use of the PRODUCTS was a substantial factor in her development of ovarian cancer. As a proximate result of Defendants' design, manufacture, marketing, sale and distribution of the PRODUCTS, Plaintiffs have been injured catastrophically, and have been caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic damages and death.

96. The development of ovarian cancer by the Plaintiffs was the direct and proximate result of the unreasonably dangerous and defective condition of the PRODUCTS at the time of sale and consumption, including their lack of warnings; Plaintiffs have suffered injuries and damages including but not limited to conscious pain and suffering of Plaintiffs, medical expenses and death.

97. The Defendants' products were defective because they failed to contain warnings and/or instructions, and breached express warranties and/or failed to conform to express factual representations upon which the Plaintiffs justifiably relied in electing to use the products. The defect or defects made the products unreasonably dangerous to those persons, such as Plaintiff, who could reasonably be expected to use and rely upon such products. As a result, the defect or defects were a producing cause of the Plaintiff's injuries and damages.

98. Defendants' products failed to contain, and continue to this day not to contain adequate warnings and/or instructions regarding the increased risk of ovarian cancer with the use of their products by women. The PRODUCTS also do not carry any warning advising that women avoid powder in the genital/perineum area or that it is unsafe to use the powders on sanitary napkins or feminine products. The Defendants continue to market, advertise, and expressly represent to the general public that talcum powders are safe for women to use regardless of application area. These Defendants continue with these marketing and advertising campaigns despite having scientific knowledge that dates back to the 1960's that their products increase the risk of ovarian cancer in women when used in the perineal area.

99. Alternatively, if his honorable Court finds that the Defendants did not have a duty to warn when Ms. Chakalos began using the product or at each time she purchased thereafter, they had a post-sale duty to warn, perhaps through advertising or public announcements, as the science developed and the danger of ovarian cancer from using talc products became clear.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and such further and other relief as the Court deems just and appropriate.

**COUNT TWO - STRICT LIABILITY – DEFECTIVE DESIGN**
**(Johnson & Johnson Defendants, Valeant Defendants, Sanofi and Chattem, Inc.)**

100. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

101. At all pertinent times, the Johnson & Johnson Defendants, the Valeant Defendants, Sanofi and Chattem, Inc. were responsible for designing, developing, manufacturing, marketing, testing, packaging promoting, marketing, labeling, selling and/or distributing the

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 62 of 82

PRODUCTS in the regular course of business.

102. The PRODUCTS are defective and unreasonably dangerous to consumers as the utility of the PRODUCTS do not outweigh the danger of developing ovarian cancer.

103. The PRODUCTS are defective in their design or formulation in that they are not reasonably fit, suitable or safe for their intended purpose (including for use in the genital area or on the perineum) and their foreseeable risks including ovarian cancer exceed the benefits associated with their design and formulation.

104. At all pertinent times, Ms. Chakalos used the PRODUCTS to powder her perineal area and her sanitary napkins, which is a reasonably foreseeable use and in a manner normally intended by the Defendants.

105. At all pertinent times, all Defendants in this action knew or should have known that the use of talcum powder based products in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960's.

106. At all pertinent times, the PRODUCTS were expected to reach, and did reach consumers in the State of New York, and throughout the United States, without substantial change in the condition in which it was sold.

107. At all times material to this action, the PRODUCTS were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled and/or sold by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include but are not limited to the following:

a. When placed in the stream of commerce, the PRODCUTS contained unreasonably dangerous design defects and were not reasonably safe as intended to be used

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 63 of 82

including dusting the perineum, subjecting Plaintiffs to risks that exceeded the benefits of the subject product.

b. When placed in the stream of commerce, the PRODUCTS were defective in design and formulation, specifically that the PRODUCTS contained Talc, making the use the PRODUCTS more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other non-talc options on the market.

c. The subject product's design defects existed before it left the control of the Defendants;

d. The PRODUCTS were insufficiently tested;

e. The PRODUCTS caused harmful side effects including ovarian cancer that outweighed any potential utility of deodorizing, preventing chaffing or other possible benefits; and

f. The PRODUCTS were not accompanied by adequate instructions and/or warnings to fully apprise consumers, including Plaintiffs herein, of the full nature and extent of the risks and side effects associated with its use, thereby rendering Defendants liable to Plaintiffs.

108. As a result, the defect or defects were a producing cause of the Plaintiff's injuries and damages. Therefore, the Defendants are liable under the Doctrine of Strict Liability in Tort.

109. The Defendants continue to market, advertise, and expressly represent to the general public that it is safe for women to use their product regardless of application. These Defendants continue with these marketing and advertising campaigns despite having

scientific knowledge that dates back to the 1960's that their products increase the risk of ovarian cancer in women when used in the perineal area.

110. In addition, at the time the subject product left the control of the Defendants, there were practical and feasible alternative designs including cornstarch based powders that would have prevented and/or significantly reduced the risk of Plaintiff's injuries without impairing the reasonably anticipated or intended function of the product. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of Plaintiff's injuries without substantially impairing the product's utility.

111. As a direct and proximate result of the PRODUCTS' defective design, Plaintiff suffered severe and permanent physical injuries including death. Plaintiff endured substantial pain and suffering. She incurred significant expenses for medical care and treatment. The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and such further and other relief as the Court deems just and appropriate.

**COUNT THREE –NEGLIGENCE**
**(As to Imerys Talc)**

112. The Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

113. At all pertinent times, Defendants had a duty to exercise reasonable care to consumers, including Plaintiffs herein, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS.

114. At all pertinent times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew and/or should have known was then being packaged and sold to consumers as the PRODUCTS by the Johnson and Johnson Defendants. Further, Imerys Talc knew and/or should have known that consumers of the PRODUCTS were using it to powder their perineal regions.

115. At all pertinent times, Imerys Talc knew or should have known that the use of talcum powder based products in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

116. At all pertinent times, Imerys Talc knew or should have known that Johnson & Johnson was not providing warnings to consumers of the PRODUCTS of the risk of ovarian cancer posed by talc contained therein.

117. At all pertinent times, Imerys Talc was negligent in providing talc to the Johnson & Johnson Defendants, when it knew or should have known that the talc would be used in the PRODUCTS, without adequately taking steps to ensure that ultimate consumers of the PRODUCTS, including Decedent, received the information that Imerys Talc possessed on the carcinogenic properties of talc, including its risk of causing ovarian cancer.

118. As a direct and proximate result of Imery's Talc's negligence Plaintiff purchased and used the PRODUCTS that caused Plaintiff to develop ovarian cancer; Plaintiff incurred medical bills, conscious pain and suffering, and death; Plaintiffs were caused to sustain damages as a direct and proximate result including untimely death, funeral and burial costs, as well as the loss of his wife's services, companionship, comfort, instruction, guidance, counsel, training and support.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and such further and other relief as the Court deems just and appropriate.

**COUNT FOUR–NEGLIGENCE**
**(Johnson & Johnson Defendants, Valeant Defendants, Sanofi and Chattem, Inc.)**

119. Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

120. The Johnson & Johnson Defendants, the Valeant Defendants, Sanofi and Chattem, Inc. were negligent in marketing, designing, manufacturing, packaging, labeling, supplying, inspecting, testing selling and/or distributing the PRODUCTS in the following ways, each of which was a proximate cause of Plaintiff's injuries and damages:

a. In failing to warn Plaintiff of the hazards associated with the use of their product, including the risk of ovarian cancer when the product is used in the genital area, in the perineal area or on sanitary napkins.

b. In failing to properly test their products to determine adequacy and effectiveness or safety measures, if any, prior to releasing these products for consumer use;

c. In failing to properly test their products to determine the increased risk of ovarian cancer during the normal and/or intended use of the products;

d. In failing to inform ultimate users, such as Plaintiff as to the safe and proper methods of handling and using their products;

e. In failing to remove their products from the market or adding proper warnings when the Defendants knew or should have known their products were defective;

f. In failing to instruct the ultimate users, such as Plaintiff, as to the methods for reducing the type of exposure to the Defendants' products which caused increased risk in ovarian cancer;

g. In failing to inform the public in general and the Plaintiff in particular of the known dangers of using the Defendants' products for dusting the perineum;

h. In failing to advise users how to prevent or reduce exposure that caused increase risk for ovarian cancer;

i. Marketing and labeling their product as safe for all uses despite knowledge to the contrary;

j. In failing to act like a reasonably prudent company under similar circumstances

121. Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff.

122. At all pertinent times, the Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

123. As a direct and proximate result of Defendants' negligence Plaintiff purchased and used the PRODUCTS that caused Plaintiff to develop ovarian cancer; Plaintiff incurred medical bills, conscious pain and suffering, and death; Plaintiffs were caused to sustain damages as a direct and proximate result including untimely death, funeral and burial costs, as well as the loss of his wife's services, companionship, comfort, instruction, guidance, counsel, training and support.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and such further and other relief as the Court deems just and appropriate.

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 68 of 82

**COUNT FIVE - BREACH OF EXPRESS WARRANTY**
**(Johnson & Johnson Defendants, Valeant Defendants, Sanofi and Chattem, Inc.)**

124. Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

125. The Johnson & Johnson Defendants, the Valeant Defendants, Sanofi and Chattem, Inc. expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that the PRODUCTS were safe and effective for reasonably anticipated uses, including use by women in the perineal area and on sanitary napkins.

126. Ms. Chakalos saw these advertisements, including television commercials, and believed the product was safe and effective to use in her perineal area.

127. The PRODUCTS did not conform to these express representations in violation of N.Y. U.C.C. Law 2-313, *et seq.* and New York common law because they cause serious injury when used by women in the perineal area in the form of ovarian cancer and were not fit for the ordinary purpose for which the PRODUCTS were sold.

128. As a direct and proximate result of Defendants' breach of warranty, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused Plaintiff to develop ovarian cancer.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and such further and other relief as the Court deems just and appropriate.

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 69 of 82

**COUNT SIX - BREACH OF IMPLIED WARRANTY**
**(Johnson & Johnson Defendants, Valeant Defendants, Sanofi and Chattem, Inc.)**

129. Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

130. At the time the Johnson & Johnson Defendants, the Valeant Defendants, Sanofi and Chattem, Inc. designed, manufactured, assembled, fabricated, labeled, packaged, sold and/or distributed the PRODUCTS, the Defendants knew of the uses for which the PRODUCTS were intended, including use by women in the perineal area, and impliedly warranted the PRODUCTS to be of merchantable quality and safe for such use.

131. The Defendants, as sellers, were merchants with respect to the products which they sold.

132. Defendants sold these products in a defective condition and therefore breached an implied warranty of fitness and an implied warranty of merchantability. Additionally, Defendants breached their implied warranties of the PRODUCTS sold to Plaintiff because the PRODUCTS were not fit for their common, ordinary and intended uses, included use by women in the perineal area.

133. Therefore the Defendants have breached the implied warranty of merchantability as well as the implied warranty of fitness for a particular purpose as stated N.Y. U.C.C. Law §§ 2-314, *et seq.* under New York common law. Such breach by the Defendants was a proximate cause of the injuries and damages sustained by Plaintiff.

134. As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff purchased and used the PRODUCTS that caused Plaintiff to develop ovarian cancer; Plaintiff incurred medical bills, conscious pain and suffering, and death; Plaintiffs were caused to sustain damages as a direct and proximate result including untimely death,

funeral and burial costs, as well as the loss of his wife's services, companionship, comfort, instruction, guidance, counsel, training and support.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and such further and other relief as the Court deems just and appropriate.

**COUNT SEVEN - CIVIL CONSPIRACY**
**(All Defendants)**

135. All of the allegations contained in the previous paragraphs are re-alleged herein.

136. Defendants and/or their predecessors-in- interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Plaintiff injuries, disease, and/or illnesses by exposing Plaintiff to harmful and dangerous products. Defendants further knowingly agreed, contrived, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said products or to expose her to said dangers. Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' products.

137. In furtherance of said conspiracies, Defendants performed the following overt acts:

a. For many decades, Defendants, individually,jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that use of their products by women resulting from ordinary and foreseeable use of the above described products were unreasonable dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

b. Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously:

   i. withheld, concealed and suppressed said medical information regarding the increased risk of ovarian cancer from Plaintiff (as set out in the "Facts" section of this pleading); In addition, on July 27, 2005 the Johnson and Johnson Defendants as part of the TIPTF corresponded and agreed to edit and delete portions of scientific papers being submitted on their behalf to the United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen;

   ii. the Johnson and Johnson defendants through the TIPTF instituted a "defense strategy" to defend talc at all costs. Admittedly, the Defendants through the TIPTF used their influence over the NTP subcommittee, and the threat of litigation against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th ROC. According to the Defendants, "… we believe these strategies paid off";

   iii. Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of ovarian cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, the Defendants through the TIPTF collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17, 1997, the

Defendants were criticized by their own Toxicologist consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

c. By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce the Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose herself to the dangers inherent in the use of and exposure to Defendants' products.

138. Plaintiff Decedent reasonably and in good faith relied upon false and fraudulent representations, omissions, and concealments made by Defendants regarding the nature of their products.

139. As a direct and proximate result of Plaintiff's reliance, Plaintiff has sustained damages including injuries, illnesses and death and has was deprived of the opportunity of informed free choice in connection with the use of exposure to Defendants' products.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and such further and other relief as the Court deems just and appropriate.

**<u>COUNT EIGHT – CONCERT OF ACTION</u>**
**<u>(All Defendants)</u>**

140. Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

141. At all pertinent times, Defendants, and the Personal care and Products Council (PCPC) knew that the PRODUCTS should contain warnings on the risk of ovarian cancer posed by women using the product to powder the perineal region, but purposefully sought to

suppress such information and omit from talc based products so as not to negatively affect sales and maintain the profits of the Defendants.

142. Additionally and/or alternatively, the Defendants aided and abetted each other in the negligence, gross negligence, and reckless misconduct. Pursuant to the Restatement (Second) of Torts Section 876, each of the Defendants is liable for the conduct of the other Defendants for whom they aided and abetting.

WHEREFORE, Plaintiffs pray for judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and such further and other relief as the Court deems just and appropriate.

## COUNT NINE- GROSS NEGLIGENCE
**(All Defendants)**

143. Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

144. The Defendants' conduct was in conscious disregard for the rights, safety and welfare of the Plaintiff. The Defendants acted with willful and wanton disregard for the safety of the Plaintiff. The Defendants' conduct constitutes gross negligence. Defendants' gross negligence was a proximate cause of Plaintiff's injuries, and as such the Defendants are liable for exemplary and punitive damages.

145. The Johnson and Johnson Defendants have a pattern and practice of this type of conduct. Specifically, these Defendants built their company on the credo, "We believe our first responsibility is to the doctors, nurses, and patients, to mothers and fathers and all others who use our products and services." The Defendants placed emphasis on shareholders believing that if they take care of everything the ethical and correct way

Case MDL No. 2738 Document 1-11 Filed 07/15/16 Page 74 of 82

profits will follow. However, over the past few decades, the Defendants have sharply deviated from their original credo, and instituted a corporate pattern and practice of placing profits over the health and well-being of its customers as evidence in the Propulsid litigation, Ortho Evra litigation, 2006 Pennsylvania Tylenol litigation, 2006 TMAP investigation, and 2007 violation of the Foreign Corrupt Practices Act.

146. The above listed evidence indicates a pattern and practice of Johnson & Johnson Defendants to place corporate profits over health and well-being of its customers. Such a pattern and practice has been followed by the Defendants regarding "Johnson's Baby Powder" and "Shower to Shower".

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and such further and other relief as the Court deems just and appropriate.

**COUNT TEN – NEGLIGENT MISREPRESENTATION**
**(All Defendants)**

147. Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

148. Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Plaintiffs and the public that the products had been tested and found to be safe and effective for use in the perineal area. The representations made by Defendants, in fact, were false.

149. Defendants failed to exercise ordinary care in the representations concerning the PRODUCTS while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants

negligently misrepresented the PRODUCTS' high risk of unreasonable, dangerous, adverse side effects, including the risk of ovarian cancer.

150. Defendants breached their duty in representing that the PRODUCTS have no serious side effects.

151. As a foreseeable, direct and proximate result of the negligent misrepresentation of Defendants as set forth herein, Defendants knew, and had reason to know, that the PRODUCTS had been insufficiently tested, or had not been tested at all, and that they lacked adequate and accurate warnings, and that it created a high risk, and/or higher than acceptable risk, and/or higher than reported and represented risk, of adverse side effects.

152. As a direct and proximate result of Defendants' conduct, Plaintiffs have been injured and sustained severe pain, suffering, loss of enjoyment of life, loss of care and comfort, economic damages and death.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and such further and other relief as the Court deems just and appropriate.

**COUNT ELEVEN – WRONGFUL DEATH**
**(All Defendants)**

153. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "26", inclusive, with the same force and effect as if fully and completely set forth herein.

154. As a result of the negligence, carelessness, and recklessness of the defendants, their servants, agents, and/or employees, in the medical services rendered, and lack of informed consent to the plaintiff's decedent, Janice Chakolas, said plaintiff's decedent sustained grievous personal injuries which resulted in her death.

155. Defendants were otherwise negligent.

156. Plaintiff's decedent, Janice Chakolas, is survived by her husband, plaintiff James Chakolas, and children, Frank C. Wolsky next of kin.

157. In connection with the injuries sustained by the plaintiff's decedent, and her resulting death, plaintiff's decedent's next of kin and plaintiff's decedent's estate have necessarily incurred, or become obligated to pay various medical and funeral and related expenses in connection with the medical treatment and the funeral of the plaintiff's decedent, and have and will necessarily incur expenses in the settlement of the estate of the plaintiff's decedent, in various amounts.

158. As a result of the negligent acts of the defendants resulting in the wrongful death of the plaintiff's decedent, decedent's next of kin have been deprived of the support, maintenance, services, guidance, communion, protection, and intellectual, moral, spiritual and physical training of the plaintiff's decedent, Janice Chakolas, amongst other losses.

159. That by reason of the foregoing, the plaintiff's decedent's next of kin have been damaged in an amount to be determined.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and such further and other relief as the Court deems just and appropriate.

## COUNT TWELVE – LOSS OF CONSORTIUM (All Defendants)

160. Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

161. Plaintiff, James D. Chakalos, has been at all times relevant to this complaint, and until her death, the husband of Plaintiff Janice Chakalos.

162. As a result of the injuries suffered by his wife, including but not limited to ovarian cancer and death, Plaintiff, has and will in the future suffer the loss of the usual services and consortium of his wife.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and such further and other relief as the Court deems just and appropriate.

## COUNT THIRTEEN – PUNITIVE DAMAGES (all Defendants)

163. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

164. The Defendants have acted willfully, wantonly, with an evil motive, and recklessly

165. in one or more of the following ways:

a. Defendants knew of the unreasonably high risk of ovarian cancer posed by the PRODUCTS before manufacturing, marketing, distributing and/or selling the PRODUCTS, yet purposefully proceeded with such action;

b. Despite their knowledge of the high risk of ovarian cancer associated with the PRODUCTS, Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling;

c. Through the actions outlined above, Defendants expressed a reckless indifference to the safety of users of the PRODUCTS, including Plaintiffs, Defendants' conduct, as described herein, knowing the dangers and risks of the PRODUCTS, yet concealing and/or omitting this information, in furtherance of their conspiracy and concerted action was outrageous because of Defendants' evil motive or a reckless indifference to the safety of users of the PRODUCTS.

166. As a direct and proximate result of the willful, wanton, evilly motivated and/or reckless conduct of the Defendants, the Plaintiffs have sustained damages as set forth above.

167. All of the Defendants have been or should have been aware for nearly forty (40) years of independent scientific studies linking the use of their products to the increased risk

of ovarian cancer in women when used 1n the perineal area. Despite this overwhelming body of evidence all of the Defendants have failed to inform their consumers of this known hazard. As such, all of the Defendants should be liable for punitive damages to the Plaintiff.

**WHEREFORE**, Plaintiff prays for a judgment for punitive damages against all Defendants in a fair and reasonable amount sufficient to punish Defendants and deter them and others from engaging in similar conduct in the future, costs expended herein, and such further and other relief as the Court deems just and appropriate.

**Damages**

168. Plaintiffs respectfully requests the following damages be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate Plaintiff:

a. Medical Expenses;

b. Pain and Suffering;

c. Mental Anguish, Anxiety, and Discomfort of Ms. Chakalos;

d. Physical Impairment;

e. Loss of Enjoyment of Life;

f. Pre and post judgment interest;

g. Wrongful death

h. Loss of consortium

i. Exemplary and Punitive Damages;

j. Treble damages;

k. Reasonable and necessary attorneys fees; and

l. Such other relief to which Plaintiff may be justly entitled.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff demands judgment of and from the Defendants in an amount within the jurisdictional limits of this Honorable Court for compensatory damages against all Defendants, actual damages; consequential damages; exemplary damages, jointly and severally against all Defendants; interest on damages (pre-and post-judgment) in accordance with the law; Plaintiff's reasonable attorney's fees, as well as costs of court and all other costs incurred; and such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

The Plaintiffs hereby demand a trial by jury on all Counts and as to all issues.

Date: October 31, 2014

Respectfully submitted,

**KUHARSKI, LEVITZ & GIOVINAZZO**

By: ______________________
MICHAEL J. KUHARSKI
For the Firm

**MOTLEY RICE, LLC**
Carmen S. Scott*
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000

*Application for admission *pro hac vice* to be filed

**Attorneys for Plaintiffs**

**CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

The undersigned attorney for Plaintiffs certifies that the matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration or administrative proceeding.

I certify that the foregoing statement made by me is true to the best of my knowledge, information and belief. I am aware that if the foregoing statement made by me is willfully false, I am subject to punishment.

Date: October 31, 2014

Respectfully submitted,

**KUHARSKI, LEVITZ & GIOVINAZZO**

By: ______________________
MICHAEL J. KUHARSKI
For the Firm
**Attorneys for Plaintiffs**