BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 2738 |
| Brenda Traylor v. Johnson & Johnson, Johnson & Johnson Consumer, Inc., f/k/a Johnson & Johnson Consumer Companies, Inc., and Imerys Talc America, Inc. f/k/a Luzenac America, Inc., M.D. Ga. C.A. No.: 4:16-cv-283 | |

**RESPONSE IN OPPOSITION TO MOTION FOR CONSOLIDATION AND TRANSFER PURSUANT TO 28 U.S.C. § 1407**

COME NOW, pursuant to Rule 6.1 of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation, Plaintiff Brenda Traylor and files her Response to the Motion for Consolidation and Transfer pursuant to 28 U.S.C. § 1407 as follows:

**I.    RESPONSE TO MOTION FOR CONSOLIDATION AND TRANSFER**

Plaintiffs respond to Plaintiff Lumas's motion as follows:

1. Admitted.  Plaintiff further states that there are other factual allegations beyond the misrepresentation of the safety and reliability of the products for personal, hygienic use.

2. Admitted.  Plaintiff further states that there are other claims of relief and theories of recovery alleged beyond those listed in Paragraph 2 of Plaintiff Lumas's motion.

3. Admitted.  Plaintiff further states that another related civil action, *Marchetti v. Johnson & Johnson, et al.*, was filed in the Middle District of Georgia-Columbus Division on June 29, 2016. (M.D.Ga. C.A. No. 4:16-cv-00227).

1

4. Denied. As discussed more fully below, transfer is unnecessary and would not promote the purposes of 28 U.S.C. § 1407.

5. Denied. If transfer is deemed appropriate, Plaintiff respectfully submits that these cases should be transferred to the Hon. Clay D. Land of the Middle District of Georgia, where two related actions are pending, for the reasons set forth below.

6. Denied. If transfer is deemed appropriate, Plaintiff respectfully submits that these cases should be transferred to the Hon. Clay D. Land of the Middle District of Georgia, where two related actions are pending, for the reasons set forth below.

7. Plaintiff does not deny that the Southern District of Illinois has resources to manage any MDL, and Plaintiff does not deny that the Hon. David R. Herndon is a well-qualified and experienced MDL judge. However, if transfer is deemed appropriate, Plaintiff respectfully submits that these cases should be transferred to the Hon. Clay D. Land of the Middle District of Georgia, where two related actions are pending, for the reasons set forth below.

## II.   ARGUMENT AND CITATION OF AUTHORITY

**(A) No MDL should be granted for this litigation due to the catastrophic nature of the injuries alleged and because much of the common work has already been done, voluntary coordination could realistically achieve the same benefits as an MDL for the relatively few filed cases.**

There is no need for a federal MDL for the talcum powder litigation. A great deal of the common work has already been done, so the potential benefits to be achieved by an MDL at this point would be minimal. In light of the delay and loss of autonomy for plaintiffs, an MDL would not be appropriate for this litigation.

The plaintiffs in these cases are women who have suffered a deadly disease, ovarian cancer, most in an advanced stage. The delay and loss of control inherent in an MDL would be

particularly detrimental to these plaintiffs who need and deserve timely resolution of their claims.[1]

There are fewer than 15 cases identified in the Motion to Consolidate. These cases do not all involve the same allegations or the same defendants,[2] and they are not in the same procedural posture. For example, *Estrada*, filed in April 2014 (Dkt. No. 1-10), and *Mihalich*, filed in May 2014 (Dkt. No. 1-9), are both consumer class actions.[3] *Chakalos* was filed in November 2014. (Dkt. No. 1-11). The progress of these procedurally-advanced cases would be hindered by the creation of an MDL at this stage.[4] *In re Reglan/Metocolpramide Prods. Liab. Litig.*, 622 F.Supp.2d 1380 (J.P.M.L.2009) (where a few cases were procedurally advanced, and "a significant amount of the common discovery has already taken place," MDL was denied); *In re Oxycontin Prods. Liab. Litig. (No. II)*, 395 F.Supp.2d 1358 (J.P.M.L.2005) (fact that pretrial proceedings were advanced in certain constituent cases weighed against MDL).

The facts do not support the expectation stated in the Motion to Consolidate that "many additional actions to be filed in the federal courts." (Dkt. No. 1-1, p. 2). As explained below,

---

[1] Certain plaintiffs could seek expedited trials or could seek to preserve their testimony via videotaped deposition in light of their advanced disease, which would further complicate coordinated pre-trial proceedings.

[2] The relatively few filed cases involve different defendants, and are apparently pursuing varying legal theories against these non-common defendants. While all cases name Johnson & Johnson or one or more of its subsidiaries, some but not all cases also name Imerys Talc America, Inc. and/or the Personal Care Products Council Foundation, or other defendants. Also, the more advanced class actions present factual and legal issues that are unique from the product liability cases.

[3] By their nature, these procedurally-advanced class actions involve factual and legal issues that are distinct from the remaining constituent product liability/personal actions, including but not limited to the class certification issues presented under Fed. R. Civ. P. 23.

[4] It is noteworthy that the plaintiff who filed the present Motion to Consolidate on July 15, 2016, Tanashika Lumas, only filed her complaint on July 1, 2016. (Dkt. No. 1-7).

there are multiple alternative State court venues for these cases, and the vast majority of cases filed to date have been filed in State court.  *If an MDL were granted*, more cases could be filed in federal court seeking to be part of the MDL, but that should not serve as a basis for granting an MDL.  *In re Zimmer, Inc. Centralign Hip Prostheses Prods. Liab. Litig. (No. II)*, 366 F.Supp.2d 1384, 1385 (J.P.M.L.2005) (potential that additional related cases may be filed not a proper basis for MDL formation).  The fact, as discussed below, that relatively few cases have been filed in federal court when this litigation has been on-going for years is an indication that an MDL is not warranted or needed.

The State Courts have served as the epicenter of this litigation for years.  There has been significant corporate discovery, several depositions, voluminous motions practice, and multiple trials to date in this litigation.  Hundreds of talc cases are filed in various State Courts, including St. Louis, Missouri, Los Angeles County and Santa Clara County, California, and Atlantic County, New Jersey, as well as other State court venues.  The New Jersey talc cases – over 180 cases filed to date – have been consolidated for pre-trial discovery pursuant to that State's Multi-County Litigation ("MCL") procedure; the first New Jersey State court talc trials are scheduled for October 2016 and January 2017.[5]  In California State Court, where over 180 cases have been filed, a hearing was recently held to determine where the State actions should be coordinated.  The Hon. Ann Jones of the Los Angeles County Superior Court entered an Order on August 2, 2016 tentatively ruling that the California State Court cases should be coordinated in Los Angeles County. (*See*, August 2, 2016 Order in JCCP 4872 attached hereto as **Exhibit 1**).  In St. Louis City Court, where more than 1,300 cases have been filed, there have already been two trials resulting in verdicts (including both a plaintiff-selected case and a defense selection), and

---

[5] http://www.judiciary.state.nj.us/mass-tort/talc-powder/index.html.

there are three additional cases currently scheduled for trial there for September 2016, January 2017 and February 2017. While there is usually some parallel State Court litigation in any product liability mass tort, the fact that related litigation has been pending in State Court for years, with significant progress and coordinated litigation plans already in place, as well as multiple trials and verdicts, underscores why there is no current benefit or need for a federal MDL.

Moreover, there has been federal litigation against these same defendants making nearly identical allegations as the personal injury cases identified in this Motion to Consolidate, which began in 2009. *Berg v. Johnson & Johnson, et al.*, C.A. No. 4:09-cv-04179, was filed in December 2009 in the District of South Dakota.  The *Berg* case itself involved substantial discovery, a number of procedural and dispositive motions, and eventually was tried to a jury verdict in October 2013.  The fact that fewer than 15 cases are filed in Federal Court since this initial Federal Court filing nearly seven years ago stands in contrast to the progress of this litigation in the State Courts, which have served as the nidus for discovery and common work product for years.

The cases identified in the Motion for Consolidation can already benefit from the efficiency and economy of common work conducted thus far in this litigation because much of that work has already been done.  While some common discovery remains to be conducted, it is evident that such work has been and should continue to be coordinated in the various on-going State court cases.  With less than 15 filed cases, the handful of law firms involved can coordinate voluntarily among themselves (and with counsel in the more developed State court litigation) to achieve efficiency and economy, while maintaining the separate identity and autonomy of each case. *See, e.g.*, *In re G.D. Searle & Co. "Copper 7" IUD Prods. Liab. Litig.*, 483 F.Supp. 1343

(J.P.M.L.1980) (Panel noted in denying MDL that alternatives exist to MDL to minimize the possibility of duplicative discovery, including stipulation that prior discovery could be used in all related actions).

The potential for conflicting rulings should be diminished by the instructive rulings by judges from a variety of jurisdictions (including a U.S. District Court) that have previously dealt with the same legal issues in cases involving similar facts. However, consistency of legal rulings should not be the basis for granting an MDL. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, unpub'd Order Denying Transfer at 1 (J.P.M.L. 2010) ("while consistent legal rulings are often a thankful by-product of centralization, Section 1407 does not, as a general rule, empower the Panel to transfer cases solely due to the similarity of legal issues.").

The liability issues remaining to be discovered in these cases are expected to be largely case-specific, which further undermines the Motion to Consolidate. The overarching factual question presented in these cases – whether talc can cause ovarian cancer – is undeniably a "common question of fact." This common question will certainly predominate in any trials in these cases. However, this issue has already been litigated, argued and discovered in multiple jurisdictions (including in federal court), and in fact, has been decided by at least three different juries. Although predictably subject to conflicting expert opinions, this is also an issue that has been addressed in peer-reviewed and published scientific and medical literature. *In re Asbestos and Asbestos Insulation Material Prods. Liab. Litig.*, 431 F.Supp. 906, 910 (J.P.M.L.1977) (MDL denied where only common questions involved state of scientific and medical knowledge at different points in time concerning asbestos risks, as to which literature was available, and many individual fact questions predominated). The answer to this important question is unlikely to turn on any discovery conducted in these cases. Regardless of whether a federal MDL is

established, the Defendants will take the position that they have already produced the relevant documents bearing on this issue, and that several pertinent corporate representatives have already been deposed.[6]  While Plaintiffs do not agree that Defendants have produced everything in their custody or control that may bear on the common issues in these cases, or that all necessary depositions have been taken, the advanced procedural history of this litigation nonetheless counsels against formation of an MDL here and shows that discovery is being adequately handled in the State Courts now.

Aside from the common question of whether talc causes ovarian cancer, many of the issues remaining for discovery in these cases will be individualized.  Questions such as the plaintiff's frequency and duration of talc use/exposure, medical history, specific causation, and damages are largely case-specific. *In re Asbestos and Asbestos Insulation Material Prods. Liab. Litig.*, *supra* at 909-910.  Likewise, anticipated defenses such as the statute of limitation are plaintiff-specific.  These individual issues would predominate in any coordinated MDL pre-trial proceedings because, again, the common issues have largely been discovered in prior related litigation. *See*, *In re Rely Tampon Prods. Liab. Litig.*, 533 F.Supp. 1346, 1347 (J.P.M.L.1982) (denying MDL where Panel was "not persuaded that…common questions of fact will predominate over individual questions of fact present in each action.").

Under the factual and procedural circumstances of this litigation, an MDL would not serve the interests of convenience for the parties or their witnesses, and furthermore, would not promote justice or efficiency in these cases and would waste judicial resources in the Federal Court system.  The Motion to Consolidate should be denied.

---

[6] Whether or not an MDL is granted, any defense representative deposition scheduled in this litigation – whether in a State coordinated proceeding or in a Federal court case – will likely be cross-noticed by the Defendants in all related cases.

**(B) In the event that transfer is deemed appropriate, transfer to the Hon. Clay D. Land of the Middle District of Georgia would best serve the goals of 28 U.S.C. § 1407.**

In the event that the Panel concludes that transfer of this litigation pursuant to 28 U.S.C. § 1407 would be proper, the appropriate transferee forum is the Middle District of Georgia rather than any of the other districts proposed.

**1. The Middle District of Georgia is the only U.S. District Court where more than one product liability action is pending, and both cases pending in the Middle District of Georgia are assigned to Judge Land.**

The Middle District of Georgia is the only federal court where more than one talc product liability action is filed.[7] Both of the Middle District of Georgia cases are assigned to Judge Land. While there are two constituent actions filed in the Southern District of Illinois, they are being handled by different judges, and one of those cases (*Mihalic*) is a consumer class action, which is procedurally advanced and involves factual and legal issues not common with the constituent product liability cases.

Only the *Estrada*, *Mihalich* and *Chakalos* constituent actions discussed above have been pending for any appreciable period of time; the remaining cases identified in the Motion to Consolidate were all filed in either June or July of 2016.

**2. The Middle District of Georgia's has favorable docket conditions, and the resources and experience to manage this litigation.**

The Federal Court Management Statistics show that the Middle District of Georgia has 455 pending cases per judgeship (398 weighted filings), a median time of 12.3 months from filing to disposition for civil cases, and only 2.7% of civil cases in the district are more than three

---

[7] While not identified in the Motion to Consolidate, a related talc product liability action *Marchetti v. Johnson & Johnson, et al.*, was filed in the Middle District of Georgia-Columbus Division on June 29, 2016. (M.D.Ga. C.A. No. 4:16-cv-00227). *Marchetti* was also assigned to Judge Land.

years old. (*See*, Fed. Court Management Statistics for M.D. of Georgia, copy attached hereto as "**Exhibit 2**").

Judge Land, to whom both *Traylor* and *Marchetti* are assigned, is an experienced Judge who handles matters with vigor and wisdom. Judge Land has valuable MDL experience, having presided over *In re Tyson Foods, Inc. Fair Labor Standards Act Litigation*, MDL No. 1854, and currently presiding over the *Mentor ObTape Transobturator Sling Products Liability Litigation*, MDL No. 2004.[8] Judge Land's experience in handling the *Mentor ObTape* MDL would be particularly valuable here as the defendant there is also a Johnson & Johnson subsidiary. Judge Land is thus familiar with Johnson & Johnson and its counsel, and he is familiar with many of the claims, defenses and legal issues likely to arise in this product liability litigation.

### 3. The Middle District of Georgia is convenient and accessible.

The Middle District of Georgia is readily accessible to all parties involved in this litigation. Columbus, Georgia, where the two constituent cases pending before Judge Land are filed, is located approximately 1 ½ hours away via Interstate Highway from Hartsfield-Jackson International Airport in Atlanta, which has more flights than any other airport in the United States. Columbus also has multiple daily flights directly to and from Hartsfield-Jackson International Airport via Delta Airlines.

### **CONCLUSION**

For the foregoing reasons, Plaintiff opposes transfer of these cases as unnecessary and because it would not promote the purposes of 28 U.S.C. § 1407. If, however, these cases are

---

[8] Most of the common pre-trial work has concluded in the Mentor ObTape MDL, and those cases have been in the process of resolving on an inventory basis for some time. Judge Land has been steadily selecting cases in that MDL for individual case preparation, and has been suggesting remand of cases for trial that have not otherwise resolved.

held appropriate for transfer, Plaintiff requests transfer of these cases for pretrial coordination to the Hon. Clay D. Land of the Middle District of Georgia.

This 5th day of August, 2016.

By: */s/ Henry G. Garrard, III*
Henry G. Garrard, III
hgg@bbgbalaw.com
Georgia Bar No. 286300

Blasingame, Burch, Garrard & Ashley, P.C.
P.O. Box 832
Athens, GA  30603
(706) 354-4000
(706) 549-3545 (fax)
Attorney for Plaintiff Brenda Traylor