**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) | MDL Docket No. 2738 |
| *Jennifer Houseman Corbett v. Walmart Inc.* No. 1:21-cv-00996-WMS (W.D.N.Y.) | | |

**DEFENDANT WALMART INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO
VACATE CONDITIONAL TRANSFER ORDER NO. 276**

Defendant Walmart Inc. ("Walmart") respectfully opposes the motion to vacate Conditional Transfer Order No. 276 ("CTO-276") filed by the Plaintiff in the *Corbett* action.

**INTRODUCTION**

The claims in this action share overwhelmingly common factual questions with the cases in the MDL proceeding and transfer of this action is warranted pursuant to J.P.M.L. precedent. Although Plaintiff attempts to thwart transfer by advancing a slew of erroneous "reasons" why her case somehow warrants special individualized treatment, it is clear that transfer will serve "the convenience of parties and witnesses and will promote the just and efficient conduct" of this and other actions before the MDL. 28 U.S.C. § 1407. In a futile effort to differentiate her case, Plaintiff misconstrues her own Complaint—which shares common factual questions with other cases in the MDL, ignores J.P.M.L. precedent—which supports transfer of actions seeking economic damages asserted against retailer defendants and putative class actions, and misapprehends the standards of commonality and convenience—which, in this case, undeniably justify MDL transfer. For these reasons, as set forth in further detail below, Plaintiff's motion fails and must be denied.

1

## BACKGROUND

On October 4, 2016, the Panel created *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation,* MDL No. 2738 (the "MDL"), initially centralizing ten talc-related actions, including two putative consumer class actions, to the U.S. District Court for the District of New Jersey before the Honorable Freda L. Wolfson for coordinated pre-trial proceedings. 220 F. Supp. 3d 1356 (J.P.M.L. 2016). Since then, thousands of talc-related cases have been transferred to the MDL, including cases brought by plaintiffs from New York and plaintiffs asserting consumer fraud claims.

The *Corbett* action, filed on September 2, 2021, is a putative consumer class action brought in the Western District of New York by Plaintiff Jennifer Houseman Corbett, a citizen of New York, individually, and on behalf of a putative class of "New York residents who purchased Johnson and Johnson's Baby Powder (the 'Product') from any Walmart store within New York or ordered the Product for delivery into New York." *See* Complaint ("Compl."), W.D.N.Y. ECF No. 1, at ¶¶ 46, 77.[1] On October 11, 2021, *Corbett* was identified as a potential tag-along action (ECF No. 2759), compelling the Panel to issue CTO-276, conditionally transferring this action to the MDL (ECF No. 2760). On October 19, 2021, Plaintiff filed a Notice of Opposition to CTO-276 (ECF No. 2768), followed by the instant motion to vacate on November 2, 2021 (ECF No. 2771).[2] On November 8, 2021, the parties stipulated and agreed to extend Walmart's time to respond to

---

[1] All "W.D.N.Y. ECF" citations refer to documents that have been filed in *Corbett v. Walmart Inc.,* No. 1:21-cv-00996, pending before the U.S. District Court for the Western District of New York. All "ECF" citations refer to documents that have been filed before the Panel in connection with this proceeding, MDL No. 2738, unless otherwise noted.

[2] In addition to the substantive reasons Plaintiff's motion should be denied, Plaintiff's motion also fails to comply with the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation in that Plaintiff has failed to submit a numbered schedule pursuant to Rule 6.1(b)(ii) or a copy of the complaint and docket sheet for the action at issue pursuant to Rule 6.1(b)(iv).

the Plaintiff's Complaint until after entry of the Panel's decision on Plaintiff's motion, which stipulation was approved by the Western District of New York that same day. *See* W.D.N.Y. ECF Nos. 7, 8. Thereafter, on November 19, 2021, and again on November 24, 2021, Walmart filed notices related to the pending bankruptcy proceeding involving LTL Management LLC. *See* ECF Nos. 2781, 2782. On December 9, 2021, a Minute Order was entered advising that the Panel does not view the automatic bankruptcy stay as barring transfer of actions to the MDL, and extending briefing on Plaintiff's motion (ECF No. 2785). [3]

## ARGUMENT

Transfer is appropriate where, as in the case of this MDL proceeding, the Panel determines that (1) "civil actions involving one or more common questions of fact are pending in different districts," (2) transfer "will be for the convenience of parties and witnesses," and (3) transfer will "promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a). Analysis of each of these factors supports transfer and coordination of the *Corbett* action with the MDL.

---

[3] It remains Walmart's position that Plaintiff's claims are subject to the automatic stay imposed by the United States Bankruptcy Court for the Western District of North Carolina in *In re LTL Management LLC,* Case No. 21-30589 (JCW), applicable to all talc-related claims asserted against certain identified "Protected Parties," including Walmart Inc. *See* ECF Nos. 2781, 2782. However, Walmart respectfully acknowledges this Panel's position that the automatic stay provisions of the Bankruptcy Code (11 U.S.C. § 362) are not "an impediment to transfer of an action." Transfer Order (*Williams*), MDL No. 2738 (J.P.M.L. Dec. 3, 2021), ECF No. 2784 (transferring *Williams* action despite Johnson & Johnson's request that action be stayed pending ongoing bankruptcy proceedings that pertain to its talc liabilities). Thus, and in accordance with the Panel's directive in its December 9, 2021 Minute Order (ECF 2785), Walmart submits this substantive opposition to Plaintiff's motion, without waiver, and with full reservation, of all rights under the applicable law with respect to any potential assertion of violation of the automatic stay. Walmart further submits, as the Panel has suggested, that "[c]laims that have been stayed in the transferor court remain stayed in the transferee court." Transfer Order (*Williams*) at 1 (citations omitted).

### I.     Common Questions of Fact Exist Between the *Corbett* Action and the Other Cases Transferred to the MDL.

Plaintiff's contention that *Corbett* lacks common questions of fact with the cases pending in the centralized MDL is incorrect. Plaintiff's case is premised entirely on allegations related to: (1) the sale of Johnson's Baby Powder—the only "Product" at issue in Plaintiff's Complaint (*see* Compl., at ¶ 6); (2) the alleged risks associated with use of talcum powder products (*see* Compl., at ¶¶ 10-20); (3) Johnson & Johnson's purported knowledge of an increased risk of cancer (*see* Compl., at ¶¶ 21-27); and (4) purported failures to warn of the "danger and risks of use" of Johnson's Baby Powder (*see* Compl., at Section III). Not only does Plaintiff's Complaint involve factual questions akin to those considered by the Panel in initially creating the MDL—*inter alia* "factual questions relating to the risk of cancer posed by talc and talc-based body powders, whether defendants knew or should have known of this alleged risk, and whether defendants provided adequate instructions and warnings with respect to the products" (220 F. Supp. 3d at 1357), but Plaintiff herself has, in support of her claims, cited to the "overwhelming number of" cases Johnson & Johnson has faced "alleging that its talcum powder caused ovarian cancer." Compl., at ¶¶ 24-26. Plaintiff cannot on the one hand rely on the existence of the MDL proceeding and the litany of similar talc-related claims to suggest knowledge and infer liability, while on the other simultaneously assert those claims are wholly irrelevant to her case.

Similarly, Plaintiff speciously contends that because her Complaint seeks only economic loss damages related to the "marketing, labeling, and sale of" Johnson's Baby Powder, pursuant to the New York General Business Law, her claims differ substantially from those centralized before the MDL proceeding and "will have no impact on the MDL and the personal injury claims in that proceeding." *See* Plaintiff's Brief ("Pl.'s Brief"), at Sections II.A & II.C. Here again, Plaintiff ignores the many cases pending before the MDL that assert economic loss claims; and in

any event, whether a claim will have "impact on the MDL" is not the test of commonality or efficiency to be considered for purposes of MDL transfer. *See* 220 F. Supp. 3d at 1357.

Indeed, Plaintiff's position overlooks numerous previous rulings by the Panel, including the very first Transfer Order in this proceeding which, along with eight personal injury cases, centralized two class actions brought on behalf of putative classes of consumers who alleged that talcum powder products were deceptively marketed for failure to disclose carcinogenic properties or cancer risk. *See* 220 F. Supp. 3d at 1357 (referring to *Mihalich, et al. v. Johnson & Johnson, et al.,* and *Estrada, et al. v. Johnson & Johnson, et al.*). Similar to Plaintiff's putative class claims here, both of those transferred actions asserted class claims under individual state consumer fraud statutes (Illinois and California, respectively), and sought to certify classes of individuals who needed only to have purchased Johnson's Baby Powder to be included. *See* ECF No. 1, Exhibit 6, at ¶¶ 85-86 and Exhibit 7, at ¶ 78. In fact, specifically excluded from those putative classes were individuals asserting claims for personal injury. *See* ECF No. 1, Exhibit 6, at ¶ 88 and Exhibit 7, at ¶ 78. Yet, the Panel determined that "[r]egardless of the type of claims involved" centralization was appropriate where "all the actions share common factual questions arising out of allegations that perineal use of Johnson & Johnson's talcum powder products can cause ovarian and uterine cancer in women." 220 F. Supp. 3d at 1357.

Accordingly, any argument by Plaintiff suggesting that her Complaint is unique in that it involves only economic loss claims, or that putative class members need only have purchased Johnson's Baby Powder without having to have suffered any commensurate physical injury, or even that different proofs of liability may be at issue, is simply misleading and ignores the Panel's prior rulings. *See In re Valsartan N-Nitrosodimethylamine Ndma Contamination Prods. Liab. Litig.,* 363 F. Supp. 3d 1378, 1382 (J.P.M.L. 2019) ("The Panel often has recognized the

efficiencies of centralizing economic loss class actions with personal injury actions, explaining that 'liability discovery in all the cases will certainly overlap,' and that in [the Panel's] experience, the individual discovery required in personal injury actions is 'regularly and successfully coordinated' within MDLs involving both kinds of actions." (citations omitted)).  Plaintiff's citation to *In re Teamster Car Hauler Prod. Liab. Litig.*, 856 F. Supp. 2d 1343 (J.P.M.L. 2012) does not revive her argument.  There, the Panel refused to centralize eleven actions which involved varying alleged defects, injuries, and defendants, and where the only common question involved the legal issue of preemption.  856 F. Supp. 2d at 1343 ("Section 1407 does not, as a general rule, empower the Panel to transfer cases involving only common legal issues.").  Here, Plaintiff's case is factually ***and*** legally common to those centralized before the MDL and warrants transfer.

Plaintiff's final attempt to differentiate this case from the others pending in the MDL by arguing that Walmart, not Johnson & Johnson, is the named defendant is similarly unavailing, as the Panel has already centralized cases involving claims against retailers with respect to their sale of Johnson's Baby Powder.[4]  *See, e.g.,* Transfer Order, at 1-2, MDL No. 2738 (J.P.M.L. Aug. 3, 2017), ECF No. 738 (transferring *inter alia* 21 actions involving claims against pharmacy defendants to the MDL).  The Panel has specifically rejected the argument that transfer of an action involving "a different named defendant – specifically, the pharmacy that allegedly sold the talcum powder products to plaintiffs" is inappropriate or will involve different discovery, reasoning that

---

[4] On this point, Plaintiff's citation to *In re Auction Rate Sec. Mktg. Litig.,* 581 F. Supp. 2d 1371 (J.P.M.L. 2008) is meritless.  *See* Pl.'s Brief, at Section II.B.  There, the Panel refused to centralize 29 securities fraud actions where no single action involved more than one defendant entity, and the actions did not involve *any* common questions of fact—e.g., the actions all involved different representations made to each purchaser of auction rate securities, which would *necessarily* vary from institution to institution.  581 F. Supp. 2d at 1372.  Here, the Panel has already determined that common questions of fact exist warranting the creation of an MDL, and has already transferred numerous actions involving retailer and other non-manufacturing defendants to the MDL.

6

"[t]ransfer under Section 1407 does not require a complete identity of factual issues or parties when the actions arise from a common factual core." *Id.* (citing *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.,* 201 F. Supp. 3d 1375, 1378 (J.P.M.L. 2016)). *See also* Transfer Order (*Moore*), MDL No. 2738 (J.P.M.L. May 31, 2017), ECF No. 595 (transferring action asserting claims against Rite Aid); Transfer Order (*Jimenez*), MDL No. 2738 (J.P.M.L. Aug. 1, 2018), ECF No. 1325 (transferring *inter alia* the *Jimenez* action, originally filed in the Supreme Court of the County of New York, and later removed to the Eastern District of New York, which included claims against retailer Duane Reade Inc.); Transfer Order (*Barsh* and *Hinton*), MDL No. 2738 (J.P.M.L. Dec. 6, 2018), ECF No. 1501 (transferring *inter alia* the *Barsh* and *Hinton* actions, which involved claims against "unique defendants"—Schnuck Markets, Inc.; PTI Union, LLC; and PTI Royston, LLC); Transfer Order, MDL No. 2738 (J.P.M.L. July 31, 2019), ECF No. 1885 (transferring seven actions involving claims against K&B Louisiana Corporation, d/b/a Rite Aid Corporation (Louisiana actions), Schnuck Markets, Inc. (*Bathon*), and Walgreen Company (*Fox*)).

Whatever slight individual issues that may arise in Plaintiff's lawsuit pale in comparison to the overlapping factual questions this case shares with the numerous other lawsuits, including consumer fraud class actions and other cases against retailers, already pending in the MDL proceeding, and as a result, do not preclude transfer. *See* 220 F. Supp. 3d at 1358 ("Though the actions may present individual issues, this generally is true of product liability cases. These actions will involve common factual questions regarding the alleged carcinogenic properties of talc and defendants' knowledge of those properties. Discovery and pretrial motion practice will overlap with respect to these common issues." (citation omitted)). *Corbett*'s proper place is in the MDL proceeding with the thousands of other cases that require resolution of the same underlying facts.

### II. Transfer Not Only Serves the Convenience of the Parties, But Also Promotes the Just and Efficient Conduct of Talc-Related Claims.

Transfer pursuant to Section 1407 is intended "to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." Manual for Complex Litigation (Fourth) § 20.131 (updated 2021) (citing *In re Plumbing Fixture Cases,* 298 F. Supp. 484 (J.P.M.L. 1968)). Application of these criteria further compels transfer.

In her motion, Plaintiff appears to have misapprehended the general intent of Section 1407, this Panel's creation of this MDL, and the current posture of this MDL proceeding. As set forth above, the Panel created the MDL in 2016 to centralize talc-related proceedings involving *the very questions* Plaintiff raises in her Complaint. Before doing so, the Panel considered various arguments by then-opposing plaintiffs regarding *inter alia* the necessity of centralization, the varying procedural postures of then-pending claims, and the potential unique factual and legal questions that may overshadow common questions. *See generally* 220 F. Supp. 3d 1356. Only after considering all of those arguments, which Plaintiff now attempts to re-litigate, did the Panel determine that centralization was warranted. *Id.* Thus, Plaintiff's attempt to rehash, for example, whether the existence of state-specific claims or alternative coordination efforts preclude centralization is futile.

Plaintiff also misinterprets the Panel's rulings with respect to other MDL proceedings by arguing that Walmart has not met some sort of hypothetical "high burden of showing that this action is so complex, or the accompanying discovery [] so time-consuming, as to overcome the inconvenience to Plaintiff and her witnesses of having actions transferred to an out-of-state forum." Pl.'s Brief, at Section II.B. The sole case Plaintiff cites in support of this hypothetical burden argument, *In re Brandywine Associates Antitrust & Mortg. Foreclosure Litig.,* 407 F. Supp.

8

236 (J.P.M.L, 1976), is wholly inapposite as it applies to the transfer of actions where only a "minimal number of actions" were involved. There, the Panel declined to transfer **two** foreclosure actions, pending in Florida and Illinois, to meet an antitrust action pending in the Eastern District of Pennsylvania for coordinated pretrial proceedings, reasoning that although there might be "some common factual issues," the foreclosure actions involved "mostly, if not entirely, local factual, legal and potentially administrative issues" and thus transfer of the actions to a foreign forum would be inconvenient to the witnesses, litigants and judiciary. 407 F. Supp. at 237-38. There is simply no comparison to be drawn. Here, the Panel has *already* made the determination that the "common factual issues [at hand] are sufficiently complex to merit centralized treatment," in creating the MDL and transferring thousands of talc-related cases for coordination. 220 F. Supp. 3d at 1357.[5]

Plaintiff's next argument regarding convenience and burden misconstrues the very nature of multidistrict litigation, which is focused on pre-trial discovery and frequently encompasses cases involving plaintiffs from across the country asserting claims pursuant to their home state laws. *Id.,* at 1357-58. That Plaintiff originally brought her case in New York is irrelevant, and

---

[5] Plaintiff also cites to other wholly irrelevant cases where the Panel had initially determined that centralization was not warranted under the specific facts presented—a posture antithetical to this MDL proceeding. For example, in *In re Title Ins. Real Estate Settlement Procedures Act & Antitrust Litig.,* 560 F. Supp. 2d 1374, 1376 (J.P.M.L. 2008), the Panel refused to centralize 25 antitrust actions pertaining to the title insurance industry, because they "encompass[ed] different regulatory regimes in the states in which actions are pending along with variances in insurance regulation and law in each state." 560 F. Supp. 2d at 1376. Similarly inapposite is in *In re Raymond Lee Org. Inc. Sec. Litig.,* 446 F. Supp. 1266, 1268 (J.P.M.L. 1978) where the Panel refused to centralize just two cases, and suggested "suitable alternatives to transfer." The Panel here has already centralized talc-related actions and transferred thousands of cases which assert claims pursuant to individual state laws to the MDL. Certainly, Plaintiff is not suggesting that further efficiencies can be achieved by disbanding the MDL to accommodate "communication and cooperation" between all courts from which thousands of talc-related cases have been transferred.

any perceived burden is neither unique to Plaintiff nor any different from the experiences of the thousands of other non-New Jersey plaintiffs whose claims are pending in the MDL proceeding. The Panel has selected the District of New Jersey as a "convenient and accessible forum […] located in close proximity to a large number of state court actions pending in New Jersey and other jurisdictions on the East Coast of the United States." *Id.,* at 1359. Certainly, a New York Plaintiff lacks sufficient grounds to argue that coordinating pre-trial proceedings in a neighboring state is more inconvenient to her than the other plaintiffs in the MDL who descend from jurisdictions across the country. As the Panel has explained in connection with this proceeding, "[w]hile it might inconvenience some parties, transfer of a particular action often is necessary to further the expeditious resolution of the litigation taken as a whole." Transfer Order, MDL No. 2738 (J.P.M.L. Aug. 10, 2021), ECF No. 477 (citations omitted). *See also* Transfer Order (*Valdez*) at 1, MDL No. 2738 (J.P.M.L. Aug. 10, 2021), ECF No. 2700 (transferring *Valdez* action over argument that transfer will inconvenience plaintiff because his witnesses were primarily in California, reasoning that "[c]entralization under Section 1407 is for pretrial purposes only […] and there usually is no need for parties or witnesses to travel to the transferee court for depositions or court hearings.").

Plaintiff's final argument regarding the infancy of the *Corbett* matter again ignores J.P.M.L. precedent and the current posture of the MDL. In its initial Transfer Order, the Panel determined that centralization was warranted despite differing procedural postures of the then-pending actions. 220 F. Supp. 3d at 1356. Since then, the Panel has rejected arguments that transfer would cause delay or prejudice to individual plaintiffs, reasoning that "[t]ransfer of an action is appropriate if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay." *See* Transfer Order

(*Jimenez*), MDL No. 2738 (J.P.M.L. Aug. 1, 2018), ECF No. 1325 (citing *In re Watson Fentanyl Patch Prods. Liab. Litig.,* 883 F. Supp. 2d 1350, 1351-52 (J.P.M.L. 2012) ("[W]e look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.")).

Further, the cases cited by Plaintiff on this issue are easily distinguishable. For example, Plaintiff's citation to *In re Freight Fuel Surcharge Antitrust Litig.* (No. II), 437 F. Supp. 3d 1365 (J.P.M.L.) is misplaced. In that proceeding, the Panel determined that while newly-filed actions were procedurally different from those centralized 13 years prior (particularly since the transferee court had already presided over common discovery, ruled on dispositive and certification issues, withstood two appeals, and released surviving actions to proceed on an individual basis), they *still* warranted centralization and a *new* MDL was created for the newly-filed matters. 437 F. Supp. 3d at 1365-66. Similarly, in *In re Seroquel Prods. Liab. Litig.* (MDL No. 1769), Order Vacating Conditional Transfer Order, ECF No. 344 (J.P.M.L. Feb. 5, 2010), all common discovery was completed and "many well considered and useful rulings on procedural, substantive and evidentiary issues" were already determined by the time the Panel considered transfer of additional actions, and the Panel reasoned that parties in subsequent actions could avail themselves of all the benefits of the MDL without requiring further centralization.

Clearly, the instant MDL proceeding is in a different procedural posture than those cited by Plaintiff, as the parties in this MDL, prior to the stay, were actively engaged in ongoing discovery, and talc-related cases continue to be transferred to the MDL—the most recent Transfer Order having been entered on December 3, 2021. *See* ECF No. 2784. Moreover, Plaintiff has failed to demonstrate that the "transferee court [has] complete[d] its primary tasks" or that the "benefits of transfer" have diminished. *Id.,* at 1. Indeed, Plaintiff has failed to set forth any valid

reason why her case warrants individualized consideration. Rather, the facts overwhelmingly support transfer of this action in order to serve the convenience of the parties and the judiciary, and to promote the judicial economy of the litigation as a whole.

## CONCLUSION

To allow the *Corbett* action to proceed outside of the MDL, despite the overwhelmingly common factual questions shared with other cases previously transferred by the Panel, would be inconvenient and inefficient, and would wholly undermine the very purpose of centralized proceedings pursuant to Section 1407. For the foregoing reasons, Plaintiff's motion to vacate should be denied and the *Corbett* action transferred to the United States District Court for the District of New Jersey.

Dated:  December 29, 2021

Respectfully submitted:

*/s/ James F. Murdica*
Barnes & Thornburg LLP
445 Park Avenue, Suite 700
New York, NY 10022
Telephone: (312) 214-4869
Facsimile: (310) 284-3894
jmurdica@btlaw.com

**Attorneys for Defendant Walmart Inc.**